## A06A2151. METOYER v. THE STATE.
### (640 SE2d 345)

RUFFIN, Chief Judge.

Shaun Metoyer was indicted on the following counts arising out of a series of robberies that were committed on two consecutive dates in April 1998 in Richmond County: eight counts of armed robbery; nine counts of possessing a firearm during the commission of a crime; one count of terroristic threats and acts; one count of kidnapping; and one count of aggravated assault. A jury convicted him of all 20 counts. On appeal, Metoyer challenges the sufficiency of the evidence, arguing that he was improperly convicted on the uncorroborated testimony of an accomplice. Metoyer also alleges that he received ineffective assistance of counsel. For reasons that follow, we affirm.

On appeal from a criminal conviction, we will uphold the jury's verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] We view the evidence in a light most favorable to the verdict and defer to the jury's determinations regarding witness credibility and weight of the evidence.[2] So viewed, the evidence shows that a series of armed robberies took place in April 1998. According to an investigator with the Richmond County Sheriff's Department, the armed robberies all occurred in the same general vicinity. In each of four separate incidents, two males exited a vehicle, approached the victims, pointed guns at them, demanded money, and took the victims' purses and/or wallets and other personal items.

On April 23, 1998, the police stopped a vehicle matching the description given by a witness to one of the robberies. Toine Daniels, Nicholas Nichols, and Tico Coleman Duncan, who were in the vehicle when it was stopped by the police, were transported to the sheriff's

---

[1] See *Bearden v. State*, 275 Ga. App. 378 (620 SE2d 613) (2005).

[2] See id.

office. Daniels directed the police to a house where the person Daniels described as "the leader" lived. At the house, police saw a car that matched the description of another vehicle involved in the robberies backing out of the driveway. Police stopped the car driven by Jenethia Hardin, Ricardo Cartledge's girlfriend, who told them that Cartledge was in the house. Police took Cartledge into custody and searched Hardin's car, where they found gloves, goggles, .380 ammunition, knit caps, and a hooded sweatshirt. Nichols, Daniels, Cartledge, Duncan, and Metoyer were all charged with crimes arising out of the robberies, and Cartledge and Metoyer were tried jointly.

Daniels pleaded guilty and testified at trial, admitting his involvement in the robberies. According to Daniels, Metoyer, Nichols, Duncan, and Cartledge were also involved in the armed robberies. Daniels gave specific details about Metoyer's involvement in an armed robbery that occurred on April 21, 1998.[3] Nichols also pleaded guilty, gave a statement to the police, and testified at trial. According to Nichols, Metoyer participated in three robberies that occurred on April 22, 1998.

The jury found Metoyer guilty of the 20 counts charged in the indictment. Thereafter, the trial court denied Metoyer's motion for new trial, and this appeal followed.

1. In his first enumeration, Metoyer contends that the evidence was insufficient to sustain the jury's verdict because the only evidence of his guilt was the contradictory and uncorroborated testimony of his co-defendants. We disagree.

It is well settled that "[a] person may not be convicted of a felony based solely on the uncorroborated testimony of an accomplice; nonetheless, only slight evidence corroborating the accomplice's testimony is required to support a conviction."[4] The corroborating evidence may be circumstantial and it "need not of itself be sufficient to warrant a conviction of the crime charged."[5] The jury determines the sufficiency of the corroborating evidence.[6] In this case, there was evidence from which the jury could find sufficient corroboration of Nichols's and Daniels's testimony to support Metoyer's convictions.

(a) Counts 1, 2, 3 and 4 of the indictment charge Metoyer with crimes arising from the armed robbery of two women at a Motel 6 on April 21, 1998. Daniels testified that he and Metoyer waited as "lookouts" in Daniels's car, which had a dealer tag with white

---

[3] Daniels denied participating in the robberies that occurred on April 22, 1998.

[4] (Citation omitted.) *Bearden*, supra at 379; see also OCGA § 24-4-8.

[5] *Etchison v. State*, 266 Ga. App. 528 (1) (597 SE2d 583) (2004).

[6] See id.; *Bearden*, supra.

lettering, while Cartledge and Nichols "robbed some people." According to Daniels, both Cartledge and Nichols were armed with guns. Daniels did not see the robbery, but he heard a woman scream and testified that Nichols had "pocketbooks" with him when he returned to the car.

Contrary to Metoyer's argument, Daniels's testimony about the robbery was corroborated by the victims and a witness. The two female victims testified that on April 21, 1998, two men approached the vehicle in which they were sitting at the Motel 6, pointed guns at them, demanded money, and grabbed three purses out of the car. According to the victims, one of the men wore a black "half face mask" and the other one wore a brown, hooded sweatshirt. One of the victims and another witness observed at least one of the robbers in a car with a red dealer tag with white lettering. Immediately after she was robbed, one of the victims heard another woman scream. The police apprehended Cartledge, Daniels, and Nichols two days later in Daniels's car, which had a red dealer tag with white lettering. And during their search of Hardin's vehicle, police recovered a black ski mask and a brown, hooded sweatshirt.

Thus, the victims' description of the perpetrators and their vehicle, as well as their testimony regarding the timing and method of the robbery, is consistent with Daniels's testimony. This evidence, in addition to the items recovered from Hardin's vehicle, provided sufficient corroboration of Daniels's testimony.[7]

Metoyer further argues that the evidence is insufficient to sustain the jury's verdict as to Counts 1 through 5 because Daniels's testimony contradicts that of Nichols.[8] "However, resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are within the province of the factfinder, not [the appellate] Court."[9]

(b) Counts 5 through 20 charge Metoyer with crimes arising out of three separate robberies that occurred on April 22, 1998 between approximately 9:00 p.m. and 10:30 p.m. In his statement to the police and at trial, Nichols described Metoyer's involvement in these three robberies.

In Counts 5 through 10, Metoyer is charged with various crimes arising out of the robbery of two people in their driveway on Exeter Road. Nichols testified that, on April 22, 1998, he, Cartledge, and Metoyer drove to Exeter Road, and Nichols and Metoyer exited the

---

[7] See *Bearden*, supra at 380-381; *Gibson v. State*, 267 Ga. App. 473, 474-476 (1) (600 SE2d 417) (2004); *Williams v. State*, 239 Ga. App. 457, 458-459 (521 SE2d 414) (1999).

[8] Nichols testified that Metoyer was not involved in the April 21, 1998 robbery at the Motel 6.

[9] (Punctuation omitted.) *Jones v. State*, 280 Ga. 205, 206 (1) (625 SE2d 1) (2005).

vehicle and approached two people in their driveway. Nichols described robbing a couple, stating that he snatched the woman's purse and the man's wallet. Nichols testified that he was armed with a chrome gun and that Metoyer "probably had a black [gun]." According to Nichols, after the robbery, some of the items taken from the couple were thrown out of the car window.

Nichols's version of the Exeter Road robbery is confirmed by physical evidence and the testimony of the victims. Both victims testified that on April 22, 1998, two men with guns approached them in their driveway and took a purse and a wallet. In addition, various personal items belonging to the victims were found littering the ground, confirming Nichols's statements that such items were thrown from the car after the robbery.

Nichols also described Metoyer's involvement in another robbery that occurred on April 22, 1998 around 9:00 p.m. at a Marriott Courtyard, which gave rise to Counts 11, 12, 13 and 14. According to Nichols, he and Metoyer exited the car at the hotel, and Metoyer approached two men in a Jeep and robbed them. Nichols testified that he had a black gun and Metoyer had a chrome gun.

Nichols's testimony regarding the timing and method of the Marriott Courtyard robbery is confirmed by the testimony of one of the victims, who testified that he and another man drove to the hotel in a Jeep Cherokee and parked the car. Two men approached them, pointed guns at them, demanded money, and took a pair of glasses, a mobile phone, a watch, and two wallets. The victim testified that the man who approached him had a black gun and the man that robbed the other victim had a chrome gun. In addition, the victim identified Metoyer as the man who robbed him.

Finally, in Counts 15 through 20, the indictment charges Metoyer with various charges arising out of the robbery of three women on Wrightsboro Road at approximately 10:15 p.m. on April 22, 1998. Nichols testified that Metoyer drove him and Cartledge to a location on Wrightsboro Road and waited in the car while Nichols and Cartledge robbed "two or three . . . older women." According to Nichols, he and Cartledge each grabbed a purse.

The victims, who were 79, 81, and 41 at the time of the trial, testified that two men approached them as they were getting out of the car and grabbed their purses from the vehicle. According to the victims, one of the men had a gun.

The victims' testimony for each of the three robberies that occurred on April 22, 1998 showed that the crimes were performed in the same manner, on the same day, in the same general area, within a two-hour time period. Generally, the victims' testimony confirmed Nichols's statements regarding the method of the robberies. One victim identified Metoyer as the man who robbed him. And the

personal items recovered from the victims of the Exeter Road robbery further support Nichols's version of events. Moreover, Nichols testified that on the evening of April 23, 1998, before he was arrested, he gave Metoyer his mother's gold Toyota Camry. The police found the Camry at Metoyer's house, further corroborating Nichols's statements. We conclude, therefore, that this evidence provided sufficient corroboration of Nichols's story.[10] And, again, resolution of evidentiary conflicts and credibility assessments are the province of the jury.[11]

2. Metoyer further contends that he was denied effective assistance of counsel because his trial counsel's representation was "unreasonable" and prejudiced Metoyer's case. We find no merit to this argument.

In order to establish ineffective assistance of counsel, Metoyer "must show that the attorney's performance was deficient and that, but for the deficient performance, there is a reasonable probability the trial would have ended differently."[12] Metoyer must overcome the strong presumption that his lawyer's conduct fell within the broad range of reasonable professional conduct.[13] "As to deficient performance, errors in judgment and tactical errors do not constitute denial of effective assistance of counsel."[14] We will affirm the trial court's determination that an accused has not been denied effective assistance of counsel unless that determination is clearly erroneous.[15]

(a) First, Metoyer argues that his trial counsel failed to "follow up on" and present an alibi witness. At the hearing on his motion for new trial, the purported alibi witness testified that Metoyer was with her at her house the evening that Nichols and Cartledge were arrested. Nichols and Cartledge were arrested on April 23, 1998. However, the crimes at issue here are alleged to have occurred on April 21, 1998 and April 22, 1998. Under the circumstances, this witness could not have provided an alibi for Metoyer for the time the alleged crimes occurred. It follows that trial counsel's failure to call the witness did not constitute ineffective assistance.[16]

And to the extent that Metoyer contends that the testimony of the purported alibi witness would conflict with and impeach Nichols's

[10] See *Boone v. State*, 282 Ga. App. 67, 69 (1) (637 SE2d 795) (2006); *Bearden*, supra; *Gibson*, supra; *Williams*, supra at 459.

[11] See *Jones*, supra.

[12] *Morris v. State*, 280 Ga. 179, 180 (3) (626 SE2d 123) (2006).

[13] See *Adkins v. State*, 280 Ga. 761, 762 (2) (632 SE2d 650) (2006).

[14] (Citation omitted.) *Taylor v. State*, 203 Ga. App. 210, 211 (3) (416 SE2d 554) (1992).

[15] See *Berry v. State*, 262 Ga. App. 375, 376 (2) (585 SE2d 679) (2003).

[16] See *Polite v. State*, 273 Ga. App. 235, 240 (6) (614 SE2d 849) (2005); *Sharif v. State*, 272 Ga. App. 660, 663 (5) (613 SE2d 176) (2005); *Johnson v. State*, 257 Ga. App. 30, 32 (2) (570 SE2d 344) (2002).

testimony regarding Metoyer's whereabouts on April 23, 1998, this argument is also unavailing. Metoyer "has not overcome the presumption that counsel's failure to call the alibi witness was made in the exercise of reasonable professional judgment."[17] Metoyer did not subpoena his trial attorney to testify at the hearing on his motion for new trial and "[t]hus, [he] made no affirmative showing that the purported deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy."[18]

(b) Next, Metoyer contends that his lawyer was ineffective because "[h]e failed to secure the *Jackson-Denno* hearing transcripts where Daniels and Nichols hotly contested the voluntariness of their statements to use for impeachment purposes." This single sentence is the sole comment in Metoyer's brief regarding this issue. Because Metoyer has not supported this portion of the enumeration of error with any meaningful argument or citation of authority, he has waived this error.[19]

Pretermitting his waiver, however, this enumeration still fails. Metoyer has not suggested how Daniels and Nichols could have been impeached by this transcript. Metoyer did not proffer the *Jackson-Denno* hearing transcript at the motion for new trial and it is not part of the appellate record. In the absence of the transcript, we cannot evaluate whether the failure to use the transcript to impeach the co-defendants was deficient or whether their impeachment might have changed the outcome of the case.[20]

(c) Finally, Metoyer asserts that he was denied effective assistance of counsel because he only met with his lawyer once before his trial. This Court has held that "there exists no magic[al] amount of time which counsel must spend in actual conference with his client."[21] More importantly, however, Metoyer "does not describe for us how

---

[17] *Jackson v. State*, 209 Ga. App. 217, 222 (7) (433 SE2d 655) (1993).

[18] (Citation and punctuation omitted.) See *Taylor*, supra at 212.

[19] See *Turner v. State*, 277 Ga. App. 205, 207 (2) (626 SE2d 176) (2006); *Jewett v. State*, 264 Ga. App. 571, 573 (4) (591 SE2d 459) (2003).

[20] See *Dixon v. State*, 267 Ga. 136, 138 (2) (475 SE2d 633) (1996) (where defendant alleges trial counsel was ineffective in failing to request a copy of a preliminary hearing for impeachment purposes, but fails to show that the transcript contains statements sufficient to cast doubt on the jury's verdict, defendant's claim for ineffective assistance of counsel fails); see also *Hinkle v. State*, 282 Ga. App. 328 (1) (638 SE2d 781) (2006) (having failed to call a witness at the motion for new trial or otherwise offer evidence as to what witness would have said, defendant cannot show that his trial counsel was ineffective); *Denny v. State*, 280 Ga. 81, 84 (4) (623 SE2d 483) (2005) (defendant failed to prove prejudice prong of test for ineffective assistance of counsel where he did not offer evidence about what a witness would have said if called at trial).

[21] (Punctuation omitted.) *Mikell v. State*, 281 Ga. App. 739, 748 (6) (b) (637 SE2d 142) (2006).

additional pre-trial communications would have changed the outcome of his trial. Therefore, he has failed to establish that this alleged instance of ineffectiveness prejudiced his defense."[22]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 8, 2006.

*Barbara B. Claridge*, for appellant.
*Daniel J. Craig, District Attorney*, for appellee.

---

[22] (Punctuation omitted.) *Vanholten v. State*, 271 Ga. App. 782, 783 (2) (a) (610 SE2d 555) (2005); see *Hinkle*, supra at 329 (2).