In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0070. TAYLOR v. METOYER.

HUNSTEIN, Justice.

In May 1999, a jury convicted Shaun Metoyer of numerous counts of armed robbery and related offenses, after which he was sentenced to consecutive life sentences. The Court of Appeals affirmed Metoyer's convictions and sentences. See Metoyer v. State, 282 Ga. App. 810 (640 SE2d 345) (2006). Metoyer subsequently filed a habeas petition in which he argued, among other things, that he received ineffective assistance of appellate counsel. The habeas court agreed with Metoyer and granted his petition; the Warden now appeals. We agree that Metoyer received ineffective assistance of appellate counsel and affirm the judgment of the habeas court.[1]

1. Because resolution of the issues before us is fact dependent, a summary of Metoyer's trial, appeal, and habeas proceedings is necessary.

In April 1998, a series of armed robberies took place in Richmond

---

[1] Since we affirm the habeas court on the grounds that Metoyer received ineffective assistance of appellate counsel, we do not reach the other grounds on which the habeas court granted relief.

County, Georgia. Metoyer, 282 Ga. App. at 810. "In each of the four separate incidents, two males exited a vehicle, approached the victims, pointed guns at them, demanded money, and took the victims' purses and/or wallets and other personal items." Id. Later that month, law enforcement stopped a car matching the description of one used in the robberies; inside the car were Toine Daniels and Nicholas Nichols. Both men were subsequently transported to the sheriff's office and interviewed. Metoyer was implicated by Nichols. Meanwhile, Daniels identified Ricardo Cartledge as the "leader" of the robberies and directed authorities to Cartledge's residence. At the residence, law enforcement observed a second car that had been described as being used in the robberies. A search of both the vehicle and the residence revealed items connected with the crime spree.

Daniels and Nichols each reached an agreement with the State and pled guilty to their involvement in the robberies. Both plea agreements reflect that the State anticipated future cooperation at trial from both men and that, following that cooperation, the State would not oppose sentence remolding. At trial, however, both men repeatedly denied that they had received "a special deal" or "special treatment" in exchange for their testimony. Notably, these

2

statements were specifically elicited by the prosecution and went largely unchallenged. As to the details of the offenses, "Daniels gave specific [testimony] about Metoyer's involvement in an armed robbery that occurred on April 21, 1998," while Nichols testified that "Metoyer participated in three robberies that occurred on April 22, 1998." Metoyer, 282 Ga. App. at 811. The trial transcript reflects that there was no physical evidence against Metoyer and that, while two robbery victims identified him as an assailant, neither victim was certain about their identification.

Following Metoyer's conviction, trial counsel, Luther McDaniel, filed a motion for new trial arguing, inter alia, that the State's evidence had been insufficient. The motion was later amended by Metoyer's first appellate counsel, Ronald Garnett, to include a claim that trial counsel was ineffective. At a July 2003 hearing on the motion, Metoyer testified in support of the ineffectiveness claim. Namely, Metoyer testified that McDaniel had failed to: speak or meet with him until the morning of trial; failed to investigate Metoyer's report that, in their respective Jackson-Denno[2] hearings, both Nichols and Daniels had asserted that their statements to law enforcement were untrue; and,

---

[2] Jackson v. Denno, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

3

investigate and present a possible alibi witness, Lenora Hazel. At the conclusion of the hearing, the trial court granted Garnett a 10-day window to secure an affidavit from Hazel. Two-and-a-half years later, a second hearing was held on the motion for new trial. During that hearing, Metoyer's second appellate counsel, Barbara Claridge, presented Hazel as a witness. However, as the trial court later indicated in its order denying the motion for new trial, Hazel could only account for Metoyer's whereabouts on the days *following* the robberies in question. Trial counsel was never called as a witness.

On direct appeal, Claridge argued that the evidence was insufficient to sustain the convictions and that McDaniel was ineffective in the following ways: by failing to investigate and present an alibi defense; by failing to secure the Jackson-Denno transcripts; and, by meeting with Metoyer only once before trial. The Court of Appeals concluded that the evidence was sufficient to sustain Metoyer's convictions and that the claims of ineffective assistance of counsel were meritless or waived. The appellate court agreed with the trial court that Hazel could not have provided an alibi for Metoyer; the appellate court also concluded that there was no evidence overcoming the presumption that trial counsel's decision not to use Hazel as a witness was strategic. With respect to

4

the claim that trial counsel should have secured the Jackson-Denno transcripts, the Court of Appeals concluded that the argument was waived because it was not supported by argument or citation of authority; the Court of Appeals also concluded that, because the transcripts were not included in the record, there was no meaningful way to determine whether the transcripts could have been used as impeachment evidence. Finally, regarding the claim that Metoyer and McDaniel met only once before trial, the Court of Appeals concluded that Metoyer had failed to establish that the single meeting amounted to deficient performance and prejudice. Metoyer, 282 Ga. App. at 814-815.

Metoyer timely filed a petition for habeas corpus in which he claimed, inter alia, that appellate counsel raised frivolous or unsupported claims on appeal and failed to raise other, more meritorious claims, such as trial counsel's failure to cross-examine Nichols and Daniels on their respective agreements with the State. The habeas court heard testimony from Metoyer, Claridge, and McDaniel. Metoyer reiterated his testimony from the first motion for new trial hearing and clarified that he was familiar with the arguments made at the Jackson-Denno hearings because he was present when the hearings were conducted. McDaniel could provide very few details regarding his

5

representation of Metoyer at trial, and he generally testified as to his usual practice with respect to his representation of criminal defendants.  Claridge testified that, while neither she nor Garnett were able to locate McDaniel, she was unaware that her failure to call him as a witness at the motion for new trial hearing would be detrimental to an ineffectiveness claim. Claridge also testified that, while she knew that she did not have a copy of the Jackson-Denno transcripts – and was aware that she could have filed a motion to have those transcripts produced  – she made no effort to secure them.  In addition to testimony, the habeas court received as evidence the record and transcript from Metoyer's trial, an incomplete portion of the disputed Jackson-Denno transcripts, and documents reflecting the plea agreements of Nichols and Daniels.

In its detailed, 50-page order, the habeas court sided with Metoyer on the issue of appellate counsel's ineffectiveness.  The habeas court found that it was obvious that Hazel could not provide an alibi for Metoyer on the dates relevant to the charges and, thus, that Claridge performed deficiently by asserting a claim of ineffectiveness based on the purported alibi testimony.  Regarding the Jackson-Denno transcripts, the habeas court concluded they were available,

would have provided impeachment material, could have been procured by both McDaniel and Claridge, and that the failure of trial and appellate counsel to procure the transcripts was not based on reasonable strategy. The habeas court reasoned that Claridge performed deficiently when she failed to procure the Jackson-Denno transcripts and failed to make a meaningful argument with respect to the associated ineffectiveness claim. Regarding the claim that counsel was unprepared for trial, the habeas court concluded that there was ample evidence that McDaniel was "woefully" unprepared and that Claridge failed to adequately present and support the argument on appeal. Finally, the habeas court also found that both Nichols and Daniels had entered into plea agreements contemplating future testimony in exchange for a subsequent sentence reduction and that neither man had been forthcoming at trial about the terms of their plea agreements. The habeas court concluded that McDaniel's failure to cross-examine Nichols and Daniels on motive and bias – as well as the misleading characterization of their agreement – could not be considered reasonable trial strategy. Likewise, the habeas court concluded that it was unreasonable that Claridge omitted a claim of ineffectiveness based on the same and that Claridge's failure to raise such a claim prejudiced Metoyer.

2. On appeal, the Warden asserts that the habeas court's findings and conclusions are clearly erroneous. We disagree.

A claim of ineffective assistance of appellate counsel requires a showing both that counsel's performance was deficient and that the deficiency prejudiced the outcome of the defendant's appeal. Sloan v. Sanders, 271 Ga. 299, 299 (519 SE2d 219) (1999); Battles v. Chapman, 269 Ga. 702 (1) (506 SE2d 838) (1998). When analyzing whether appellate counsel's performance was deficient, "the controlling principle is 'whether (appellate counsel's) decision was a reasonable tactical move which any competent attorney in the same situation would have made.' [Cit.]" Shorter v. Waters, 275 Ga. 581, 584 (571 SE2d 373) (2002). The prejudice prong requires the petitioner to show that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Cit.]" Hardeman v. State, 281 Ga. 220, 221 (635 SE2d 698) (2006). Finally, "[a] habeas court's determination on a claim of ineffective assistance of counsel is to be affirmed unless the reviewing court concludes the habeas court's factual findings are clearly erroneous or are legally insufficient to show ineffective assistance of

8

counsel." (Citations omitted.) Head v. Thomason, 276 Ga. 434, 436 (1) (578

SE2d 426) (2003).

We conclude that the habeas court's findings are supported by the record

and that those findings are legally sufficient to show that Claridge was

ineffective. As an initial matter, we agree that the claims raised by Claridge on

appeal were untenable. The record is clear that Hazel could not provide an alibi

for Metoyer and that any ineffectiveness claim related to trial counsel's failure

to call her as a witness was frivolous. Likewise, we agree with the habeas court

that no competent attorney would have asserted an ineffectiveness claim based

on the Jackson-Denno transcripts in the manner in which Claridge presented it

on appeal; notably, Claridge presented a one-sentence argument regarding the

claim on appeal and failed to support the claim with either the transcripts

themselves or an explanation of what the transcripts would have shown. See

Metoyer, 282 Ga. App. at 815. Further, we agree that Claridge failed to

competently assert the claim that counsel was unprepared for trial. Instead of

focusing on trial counsel's level of preparation, Claridge presented the claim in

the context of how many times trial counsel had met with Metoyer without any

analysis as to prejudice. It is well established that, in the absence of argument

9

and evidence supporting prejudice, an appellant cannot prevail on a claim of ineffectiveness. See Owens v. State, 269 Ga. 887 (2) (a) (506 SE2d 860) (1998) (failure to prove prejudice fatal to claim that trial counsel was ineffective for failing to prepare for trial).

We also agree with the habeas court that a stronger claim of ineffectiveness existed which Claridge could have raised. See Shorter v. Waters, 275 Ga. at 584. In addition to trial counsel's failure to secure the Jackson-Denno transcripts to utilize as impeachment evidence, trial counsel also failed to cross-examine the testifying co-defendants on both the actual terms of their plea agreement and on the fact that the two men had misrepresented the nature of their agreements with the State. Though the scope of cross-examination will rarely support a claim of ineffectiveness, see Simpson v. State, 277 Ga. 356 (4) (b) (589 SE2d 90) (2003), the identification of Metoyer was a key issue at his trial and no reasonably competent attorney would have elected to forgo cross-examination that would have cast doubt on the credibility of both the State and its key witnesses. See Higgins v. Renico, 470 F3d 624, 632-634 (III) (6th Cir. 2006) (concluding that trial counsel's failure to cross-examine key witness for the State constituted deficient performance and collecting cases

10

holding the same). Trial counsel's deficient performance here is significant in light of the underwhelming case against Metoyer, which was based primarily on the testimony of Metoyer's co-defendants. Trial counsel's failure prevented the jury from hearing what motive the co-defendants had in testifying against Metoyer; it also prevented the jury from learning that the co-defendants and the State had been less than forthcoming about their agreements. Such a claim satisfies both prongs of Strickland.[3] "Given that trial counsel's performance . . . was deficient and the deficiency prejudiced [Metoyer's] defense, had appellate counsel raised this issue on appeal [Metoyer] would have been entitled to a reversal of his armed robbery . . . convictions." Crawford v. Thompson, 278 Ga. 517, 520 (603 SE2d 259) (2004). See also Stanford v. Stewart, 274 Ga. 468 (2) (554 SE2d 480) (2001) (where error would have mandated a new trial, prejudice is "obvious"). As the habeas court correctly granted Metoyer's habeas petition, the judgment of that court is affirmed.

Judgment affirmed. All the Justice concur.

_____

[3] Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).