S93A0609. BROCKMAN v. THE STATE.
(436 SE2d 316)

HUNSTEIN, Justice.

This is an interim appellate review of a case in which the State seeks a death penalty. Brockman and three accomplices allegedly killed a service station attendant during an attempted armed robbery. The State contends Brockman was the triggerman and that this was only one of several armed robberies and attempted armed robberies committed by Brockman in a crime spree following Brockman's theft of a Chevrolet Camaro.

1. Brockman contends the trial court erred by finding that his statement and confession were admissible notwithstanding his invocation of his right to counsel. The trial court was authorized to conclude from testimony adduced at the hearing that Brockman and his accomplices were arrested following a high-speed chase into Phenix City, Alabama, that ended at the apartment of Brockman's female companion, where police used tear gas to force Brockman out of the attic. Brockman and his accomplices were transported to the local jail. Detective Boren of the Columbus Police Department introduced himself to Brockman, told him he was interviewing the other three

---

suspects but would talk to him later, and left. Officer White of the Muscogee County Sheriff's Department stayed with Brockman. While White helped him clean insulation from the attic off his face, Brockman began asking White about how the police had known it was Brockman and his accomplices in the vehicle and "chit chatted" about the chase. White testified that he asked Brockman no questions and that all conversation originated from Brockman. At some point, Brockman bragged that had he been driving instead of an accomplice, the police would not have caught them because he was the better driver. Brockman also stated that the police were "lucky" because at one point he started to "stick a shotgun out the window and take a shot at y'all."

Boren returned and advised Brockman, for the first time since his arrest, of his *Miranda* rights (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)). When Brockman stated that he "might" want to talk to an attorney, Boren told him to make up his mind, and left the room. Shortly thereafter, Brockman asked Officer White about a piece of paper Boren had been carrying and White answered that he did not know. Within minutes of White's response, Brockman requested to speak again to Boren. Upon his return, Boren asked Brockman what he wanted. White testified that Brockman answered, "I need to talk to you." Brockman then proceeded to question Boren about evidence the police had against him and told Boren the others' statements should be discounted because they did not know what had actually transpired. Boren testified that he did not question Brockman about the case and instead inquired only whether Brockman would waive extradition to Georgia. Brockman agreed and was transported to the Columbus Police Department. At that time (approximately three hours after Boren first spoke to Brockman), Boren re-advised Brockman of his rights and obtained a written waiver. Brockman then gave a brief incriminating statement, which was followed in greater detail by a statement videotaped by the police.

Brockman testified that he told Officer White that he wanted a lawyer, repeated his request when Boren informed him of his *Miranda* rights, and asked for a lawyer when Boren inquired about waiving extradition.

(a) As to the incriminating statements Brockman made to Officer White, the trial court was authorized to conclude that Brockman had not requested counsel at the time the statements were made. Hence, the statements were not inadmissible on Brockman's asserted basis that they were elicited after he had invoked his right to counsel. We note that no ruling was requested from the trial court as to whether these statements were made in response to "interrogation" by White prior to which the warnings required by *Miranda v. Arizona*, supra, should have been given. See *Rhode Island v. Innis*, 446 U. S. 291 (100

SC 1682, 64 LE2d 297) (1980); *Turner v. State*, 199 Ga. App. 836 (3) (406 SE2d 512) (1991).

(b) As Brockman contends, his statement to Boren that he "might" want to talk to an attorney was at least an equivocal invocation of his right to counsel. Brockman contends that when the interrogation began later, Brockman's desires about counsel were not sufficiently clarified. See *Hall v. State*, 255 Ga. 267 (2) (336 SE2d 812) (1985). But even where a suspect makes an unequivocal request for counsel — which cuts off *all* police-initiated interrogation, including further clarification, see *Allen v. State*, 259 Ga. 63 (377 SE2d 150) (1989) — a suspect may be interrogated further *if* he (a) initiates further discussions with the police and (b) knowingly and intelligently waives his *Miranda* rights. *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). That is what happened here. *Guimond v. State*, 259 Ga. 752, 754 (2) (386 SE2d 158) (1989); *Tatum v. State*, 203 Ga. App. 892 (1) (418 SE2d 152) (1992).

(c) As to the videotaped confession, Brockman was advised of his *Miranda* rights at the outset, and he waived them on tape. A review of the tape reveals that near the end of the interview, Brockman referred to his original intention not to talk to police until he first consulted an attorney (explaining why he was shouting at his accomplices at the scene of the arrest, ordering them not to talk). Brockman's reference to his previous state of mind was not a request for counsel, equivocal or otherwise. *Hall v. State*, supra at 270.

2. The State contends the trial court erred by granting Brockman's motion to sever Counts 3 and 4. Count 3 alleges the commission of an armed robbery earlier the same day as the attempted armed robbery and murder alleged in Counts 1 and 2. Count 4 alleges the theft of the motor vehicle used in the commission of the crimes alleged in the other three counts.

The crimes alleged in Counts 3 and 4 were joined to Counts 1 and 2 as part of a " 'series of acts connected together or constituting parts of a single scheme or plan.' [Cit.]" *Gober v. State*, 247 Ga. 652, 653 (278 SE2d 386) (1981). In such cases, the trial court may order severance. Id. The State has not shown any prejudice, and we find no abuse of discretion.

3. The State contends the trial court erred by ruling that the State could not prove as a similar act the theft of the Chevrolet Camaro.[1] The trial court, after hearing, ruled that three extrinsic armed robberies and attempted armed robberies committed within a two-day period in and around the Columbus area would be admissi-

---

[1] The State, in seeking the admission of this evidence, complied with Uniform Superior Court Rules 31.1 and 31.3.

ble, but that the theft of the Camaro four days before the murder would not be admissible, apparently on the ground that the theft of an automobile was not sufficiently similar to an armed robbery to warrant its admission.

While Uniform Superior Court Rule 31.3 speaks of "similar" transactions, the issue of admissibility of extrinsic transactions has never been one of "mere similarity." *Williams v. State*, 251 Ga. 749, 784 (312 SE2d 40) (1983). It is, rather, "relevance to the issues in the trial of the case." Id.

> Depending upon the purpose for which the extrinsic offense is offered, the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a *logical connection* between crimes which are essentially dissimilar.

(Emphasis supplied; punctuation omitted.) *Ward v. State*, 262 Ga. 293, 295 (2) (417 SE2d 130) (1992).

In this case, the stolen Camaro was used in three of the four armed robberies and attempted armed robberies committed within a short period of time, and was the car involved in the high-speed chase from Columbus to the Phenix City apartment where Brockman and the others were arrested. Included among the evidence recovered by the police was an "agenda," or list of things to do; Brockman, during the videotaped interrogation, confirmed that the "agenda" included the theft of a motor vehicle and the commission of armed robberies.

From this evidence it is apparent that the theft of the automobile was part of a larger plan or scheme which included the commission of the attempted armed robbery on trial. The trial court erred by concluding that the theft of the Camaro was not sufficiently similar or logically connected to the crimes on trial to be admissible. *Todd v. State*, 261 Ga. 766 (7) (410 SE2d 725) (1991). We leave open the issue of the trial court's discretion to exclude relevant evidence " 'if its probative value is substantially outweighed by the danger of unfair prejudice, [etc.],' " *Hicks v. State*, 256 Ga. 715, 720-721 (13) (352 SE2d 762) (1987), as such was not the basis of the court's ruling.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

DECIDED NOVEMBER 8, 1993 —
RECONSIDERATION DENIED DECEMBER 8, 1993.

*Hagler & Hyles, Richard C. Hagler, M. Stephen Hyles,* for appel-

lant.

*Douglas C. Pullen, District Attorney, J. Gray Conger, Jerry G. Croley, Jr., Assistant District Attorneys,* for appellee.