A05A1961. WADDELL v. THE STATE.
(627 SE2d 840)

ANDREWS, Presiding Judge.

Terrence Arlington Waddell, convicted by a jury of armed robbery of and aggravated assault on LePaul Manson, appeals from the trial court's denial of his motion for new trial, challenging the sufficiency of the evidence, contending that portions of the jury charge were erroneous, and that the victim's in-court identification of Waddell was tainted by improper pre-trial identifications.

1. We consider first the sufficiency of the evidence.

> On appeal, we view the evidence in the light most favorable to the verdict and [Waddell] no longer enjoys the presumption of innocence. We neither weigh the evidence nor judge the credibility of the witnesses, but only determine if the evidence is sufficient to sustain the convictions. [Cit.] OCGA § 24-4-8 provides that the testimony of a single witness is generally sufficient to establish a fact. The only exception in a felony case is when the single witness is an accomplice, which is not applicable to the present case. [Cit.]

*Lovelace v. State*, 269 Ga. App. 272, 273 (1) (603 SE2d 784) (2004).

So viewed, the evidence here was that, on the evening of Saturday, March 22, 2003, Manson, accompanied by his friend Khalil Reid, had been selling DVDs and sports shoes out of his car.[1] They went to a Waffle House to eat between 2:00 and 4:00 on Sunday morning.

---

[1] Manson worked for the Atlanta Journal/Constitution during the day and conducted his sideline business at night and on the weekends.

While there, Manson had a CD/DVD player which he put on the table in order to demonstrate DVDs for anyone interested. This attracted the attention of a large group of high school students in the Waffle House. When Manson went outside to smoke a cigarette, Waddell[2] and other teenagers followed him outside. The teens said some were from Lithonia High School and some, including Waddell, were from the Open Campus. Only one of the teenagers, Waddell, made a purchase from Manson that morning. Waddell purchased a pair of Nike Air Jordans and told Manson that he wanted to buy another pair of shoes, but did not have enough money. Manson and Waddell exchanged cell phone numbers so Manson could be contacted when Waddell got more money. Manson saw Waddell get in a black car with "speedimports.com" on the back.

On Sunday evening, Manson received a call from Waddell, whose voice he recognized as the person who bought shoes earlier that morning. Waddell said he still did not have the money, but would follow up and contact Manson when he did. On Monday evening, between 7:00 and 9:00, Waddell called Manson again and gave him an address in Somerset Condominiums where Waddell said he would meet Manson to buy the other shoes. Manson drove to the address, but could not locate Waddell. He did, however, see the black car with "speedimports.com" on it parked in the parking lot.

Waddell called Manson again and told him to return to the address and he would find Waddell standing against a car in the parking lot. Manson drove back to the condos. He knocked on a door and asked the resident, Mr. Alexander, for someone, but Alexander did not know what he was talking about.[3] Later, Manson did find Waddell standing against a car. Waddell approached Manson's car and asked him if he had a lighter. Although Manson looked for a lighter, he could not find one. While he was looking for the lighter, Waddell mentioned a pair of Air Force One shoes he could see in the rear of the hatchback car. Manson got out to open the trunk and Waddell stayed close to him. When Manson got ready to open the trunk, he "heard the cocking back of a gun." When he turned in response to the sound, Manson was shot in the face, severely injuring him. As he fell to the ground, he saw Waddell fumbling in the trunk and then a second individual come up and go to the passenger door and begin to rummage through his things. Manson remembers them asking him if he had money.

---

[2] Manson did not learn Waddell's name at any point during these events.

[3] Alexander heard what he first thought were fireworks about 45 minutes later, looked out his window, saw the young man who had knocked on his door bleeding in the parking lot, and called 911.

Police found a 9 mm shell casing at the scene of the shooting. Manson suffered a bullet wound to his jaw and the bullet ricocheted and came to rest in his lung. He was hospitalized for three weeks.

Shortly after Manson was hospitalized, he was visited by Reid, who asked him what happened. Manson told him it was one of the guys to whom he had sold shoes. Reid recalled that the young man drove off in a black sporty looking Honda with "speedimports.com" on the back. Reid called the detective on the case and gave him this information as well as telling him that Waddell attended the Open Campus. Detectives contacted Officer Lee, the school detective at the Open Campus and asked her to check for this Honda. She did, and found Waddell driving it on campus. The car was registered to Waddell and his mother, Patricia Waddell.

Detectives obtained phone records for Manson's cell phone and determined that the number used to contact Waddell was that of Patricia Waddell, who lived in the same neighborhood as the Somerset Condominiums. Detective Stanfield then put together a photographic array of six pictures, including Waddell's. On May 23, 2003, he showed the array to Manson, who picked Waddell's photograph and said he was "70 percent sure." The reason he said only 70 percent was because of the skin tone as reflected in the photograph.

An analysis of the cell phone records showed calls to and from Ms. Waddell's phone and Manson's phone. There was a call from the Waddell phone to Manson's phone at 8:24 p.m. on Sunday, March 23, 2003, and one shortly before 11:00 p.m. on Monday, March 24.

Waddell argued mistaken identity at trial. But, "[t]he jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence." (Citation omitted.) *Strong v. State*, 265 Ga. App. 257, 258 (593 SE2d 719) (2004). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

The evidence was sufficient to prove aggravated assault and armed robbery.

2. Waddell's second through seventh enumerations of error deal with the charge to the jury on parties to a crime. These enumerations are considered together.

During discussion of the jury charge, the State requested that a charge on parties to a crime[4] be given, due to the appearance of the second individual at the crime scene. Waddell's trial counsel objected to the giving of this charge because the State charged Waddell with

---

[4] OCGA §§ 16-2-20; 16-2-21.

directly committing the crime. The trial court did not give it during the initial charge to the jury.

During the jury's deliberations, this question was posed to the court: "If one actively participates in the robbery but does not hold the gun or has possession of the shoes, are they guilty of armed robbery?" In response, the trial court charged the jury as follows:

> In response to that question, I'm going to further instruct you: every party to a crime may be charged with and convicted of commission of the crime. A person is a party to the crime only if that person directly commits the crime or intentionally helps in the commission of the crime. Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that the person was a party to it, even though the person claimed to have directly committed the crime has not been prosecuted or convicted or has been convicted of a different crime or degree of crime or is not amenable to justice or has been acquitted.

Waddell's counsel again objected to the charge on the same basis, but the trial court pointed out that Manson had seen a second individual at the scene and had not actually seen Waddell with the gun, but only heard it cock. The trial court concluded that might be the basis of the jury's question and gave the charge.

Waddell's contention that the case was not indicted, tried or argued on the theory of party to a crime is without merit since OCGA § 16-2-20 (b) (1) defines a party to the crime as one who "[d]irectly commits the crime."

It is within the discretion of the trial court to determine whether supplemental jury instructions are necessary. See *Payne v. State*, 219 Ga. App. 318 (1) (b) (464 SE2d 884) (1995). On appeal, we review the trial court's determination for abuse of that discretion, "taking into account the sensitive nature of the judge's responsibility at this stage of the trial and the duty of the trial judge to provide impartial and effective guidance on the law for the jury to follow in its deliberations." (Punctuation omitted.) Id. We have held that

> [t]he court has a perfect right, after the jury has retired to consider its verdict, to call the jury back into the courtroom and either give further instructions which have been omitted through oversight or, on receiving a request for further instructions, to give such reply as the facts may warrant.

*Barraza v. State*, 149 Ga. App. 738, 739 (2) (256 SE2d 48) (1979). See also *Putnam v. State*, 250 Ga. 418, 419 (2) (297 SE2d 286) (1982); *Payne v. State*, supra at 318 (1) (b); *Litmon v. State*, 186 Ga. App. 762 (2) (368 SE2d 530) (1988).

Waddell's argument that it was error not to charge the entire statute is also without merit. OCGA § 16-2-20 (b) (2) and (4) involve causing another person to commit the crime under circumstances where the other person cannot be guilty of a crime "in fact or because of legal incapacity" and advising, encouraging, hiring, counseling, or procuring another to commit the crime. There was no evidence to support a charge on either subsection here.

In *Sharpe v. State*, 272 Ga. 684, 688 (6) (531 SE2d 84) (2000), Waddell's argument that the trial court erred in using "intentionally helps" instead of "aids or abets" was rejected.

There was no error in the court's charge on parties to the crime.

3. In his eighth enumeration, Waddell argues that the trial court erred in sustaining the State's objection to his trial counsel's referring in his closing argument to the contents of the police officer's investigative report. State's Exhibit 24, the report, was shown to the officer by the State for the purpose of refreshing his recollection about the identity of the person who called 911. It was admitted "for [the] record only," since the report would not be going out with the jury.

During his closing, trial counsel argued that the case was about a vehicle. "The detective said it himself. It started with a car. That's what he said. He said that, but not — this report. [State's Exhibit 24] doesn't say that, no mention of a car. This isn't a report that says no mention of a car. This is a report that says the victim did not know, or did not know what type of vehicle, or if they fled on foot or by vehicle." At that point, the State's objection that counsel was referring to the contents of the report was sustained. The State's attorney acknowledged that Waddell's counsel could certainly argue about the officer's testimony.

The contents of the officer's narrative in his investigative report were not admissible and the trial court properly sustained the objection. *Brown v. State*, 274 Ga. 31, 32 (1) (549 SE2d 107) (2001); *Armour v. State*, 265 Ga. App. 569, 573 (3) (594 SE2d 765) (2004); *Nelson v. State*, 197 Ga. App. 898, 899 (2) (399 SE2d 748) (1990).

4. Prior to trial, Waddell filed a motion to suppress Manson's pre-trial identification of him at his preliminary hearing and to preclude trial identification of him. Its denial is urged as error.

As set out above, after reading and signing an admonition,[5] Manson was shown a photographic array and identified Waddell's

---

[5] The admonition informed Manson that the lineup he was going to look at may or may not

photograph to a 70 percent certainty. His hesitation was based on the fact that, in the photograph, Waddell had more hair than on the date of the incident and his complexion appeared a shade or two lighter. At the preliminary hearing later, Waddell was dressed in an orange jail suit and escorted by the investigating detective when he was identified by Manson. The State agreed that this was an impermissibly suggestive showup. During the motion to suppress hearing, Manson positively identified Waddell, based on his viewing of him during the thirty to forty-five minutes in the Waffle House, at his car for seven to ten minutes in the well-lighted parking lot while selling Waddell shoes, and during the several minutes prior to his shooting.

> Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Talley v. State*, 209 Ga. App. 79, 80 (1) (432 SE2d 667) [(1993)]; see also *Merritt v. State*, 211 Ga. App. 228, 230 (438 SE2d 691) [(1993)]. In fact, even where a pretrial identification has been found to be tainted, a subsequent in-court identification is admissible if it does not depend on the prior, tainted identification but has some other, independent basis. *Jacobs v. State*, 207 Ga. App. 714, 715 (429 SE2d 256) [(1993)], citing *Arnold v. State*, 198 Ga. App. 449, 450 (1) (402 SE2d 69) [(1991)].

*Tiller v. State*, 222 Ga. App. 840, 841 (476 SE2d 591) (1996).

It is up to the trial court to determine under the totality of the circumstances whether the police procedure was impermissibly suggestive, and "[i]f so, the court must then decide whether, given the totality of circumstances, there was a substantial likelihood of misidentification." (Citation and punctuation omitted.) *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004).

In making this determination, the court must consider a number of factors, including:

> (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the

---

contain a photograph of someone suspected of committing the crime against him and that he was not obligated to identify anyone.

accused;[6] and (5) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.

(Citation and punctuation omitted.) *Williams v. State*, 269 Ga. App. 673, 677 (3) (a) (605 SE2d 83) (2004).

The photographic array used for the initial identification of Waddell is before us and contains photographs of six young men of similar complexion, size, hair styles, and facial features. It was not impermissibly suggestive. *Jennings v. State*, 277 Ga. App. 159 (626 SE2d 155) (2006).

The trial court was also correct in concluding that the improper showup at the preliminary hearing did not preclude Manson's identification of Waddell at trial because, given the totality of the circumstances of Manson's interaction with Waddell, there existed no substantial likelihood of irreparable misidentification. *Mobley v. State*, 277 Ga. App. 267 (626 SE2d 248) (2006); *Jacobs v. State*, supra at 714 (1); see *Davis v. State*, 216 Ga. App. 580, 582 (2) (455 SE2d 115) (1995).

5. Because the trial court did charge the pattern charge on identity, including the now disapproved "level of certainty" factor, *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), Waddell argues that his conviction must be reversed.

First, we note that, during the pre-charge conference, defense counsel stated that he had no objection to this charge. Further, asked again following the giving of the charge to the jury if there were objections, defense counsel answered "[n]o, Your Honor."

"It is well established that if a defendant fails to object to a charge when asked if he has any objections, and fails to reserve objections, he has waived appellate review of the charge as given." (Punctuation omitted.) *Brown v. State*, 268 Ga. App. 629, 632 (2) (602 SE2d 158) (2004).

Further, even had such an objection been made, reversal under *Brodes v. State*, supra, is not required. Here, unlike in *Brodes*, there was evidence in addition to the eyewitness' identification which linked Waddell to the incident. The car being driven by him was identified by Reid, and both Reid and Manson recalled the bumper sticker. Also, the cell phone records tied Waddell to the events, and he and his mother lived in the area where the crime occurred. Under these circumstances, the "level of certainty" portion of the identity charge was harmless because it is highly probable that the error did

---

[6] Giving a charge to the jury on the level of certainty of the witness is no longer allowed. *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005).

not contribute to the judgment. *Dunson v. State*, 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005).

6. In his final enumeration, Waddell contends that trial counsel rendered ineffective assistance by not objecting to the trial court's recharge, at the jury's request, on parties to the crime.

(a) We first note that trial counsel did make an objection to the court's charge on parties to a crime, as discussed in Division 2.

(b) Appellate counsel entered the case prior to the hearing on the motion for new trial and filed an amended motion for new trial including the allegation of ineffective assistance of trial counsel. Trial counsel, however, was not called as a witness at the hearing, nor was any other evidence presented regarding the ineffectiveness claim.

Under these circumstances, Waddell's appellate counsel has already had the opportunity to present evidence to the trial court on the issue of ineffective assistance of counsel. By failing to take advantage of that opportunity at the hearing, after which the court ruled on the new trial motions, Waddell has failed to carry the burden of showing ineffective assistance of counsel. See *Rucker v. State*, 270 Ga. 431, 435 (6) (510 SE2d 816) (1999); *Smith v. State*, 263 Ga. 224, 225 (3) (430 SE2d 579) (1993); *Parkman v. State*, 241 Ga. App. 756, 758 (4) (526 SE2d 640) (2000).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED FEBRUARY 28, 2006 — 

*J. M. Raffauf*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.