A06A2061. SANTANA v. THE STATE.
(642 SE2d 390)

RUFFIN, Judge.

A jury found Kris Santana guilty of armed robbery. Santana appeals, contending that the trial court erred in admitting certain hearsay evidence and in charging the jury. For reasons that follow, we affirm.

Viewed in a light favorable to the verdict,[1] the evidence shows that on November 30, 2003 at approximately 6:15 p.m., Paula Hubbs was robbed by a man as she walked from a parking deck to her apartment. After the man approached Hubbs three separate times in the parking deck, he pointed a gun at her, and took her jacket and purse, which contained her wallet and cellular telephone.

Police officer Jamie Payton heard a broadcast over the police radio regarding the robbery. At 6:35 p.m., Payton stopped Santana and another male, Rufus Dixon, after she observed their vehicle driving away from Hubbs's apartment complex. Dixon and Santana told Payton they had been visiting a friend at the apartment complex. Payton observed several items of clothing in the back of the car, some of which "kind of matched" the description of the perpetrator's attire

---

[6] (Emphasis supplied.)

[7] See *Cabell v. State*, 250 Ga. App. 530, 531 (551 SE2d 386) (2001).

[1] See *Harmon v. State*, 281 Ga. App. 35 (635 SE2d 348) (2006).

given in the radio broadcast. Payton gave Dixon two traffic citations and allowed them to leave.[2]

Police obtained Hubbs's cell phone records, which indicated that her phone had been used to call Santana's home telephone number. The records also showed three calls placed from Hubbs's cell phone to the residence of Gloria Sheppard. Sheppard confirmed that Santana, her daughter's boyfriend, had called her home. Santana called Sheppard's house while the police were there, and he spoke to the authorities.

Santana told police that he was with Dixon the night of the robbery, but denied robbing Hubbs. Dixon admitted that he was with Santana the evening of November 30, 2003, but initially denied any knowledge of the robbery. After giving multiple versions of events, Dixon eventually told authorities that Santana told him to pull his car over into an apartment complex after Dixon told him he needed money for gas. Santana left the car and returned several minutes later with a purse under his shirt. Santana threw several items in the purse from the car window. After they left the apartment complex, the two men purchased gas at a Shell station next to Dixon's apartment. Santana gave Dixon one of the victim's credit cards, and Dixon attempted to use it thereafter to purchase gas in Adairsville.

According to the police, Hubbs's credit card was used at a Shell gas station located 1,000 to 1,200 feet from Dixon's apartment at approximately 7:00 p.m. on November 30. Someone also attempted to use her card at a gas station in Adairsville approximately two hours after the robbery, but the purchase was denied. Some of Hubbs's personal items, including her driver's license, were found on the street near the robbery location.

Two days after the robbery, Hubbs identified Santana from a photographic lineup as the person who robbed her. Hubbs also identified Santana at trial. Dixon testified at trial as well and admitted that he was with Santana on November 30, but he denied any involvement with the robbery, claiming that his previous statement to the police was the result of threats and coercion. The jury found Santana guilty of armed robbery and he appeals.

1. Santana contends that the trial court erred in admitting Hubbs's telephone records into evidence. He argues that because the records custodian for T-Mobile had no personal knowledge of the phone records, she was not qualified to establish a foundation for the documents to be admitted under the business records exception to the hearsay rule. We disagree.

---

[2] Although Payton testified that she suspected Dixon and Santana of committing the robbery, she was unable to prolong the investigation without back-up.

The admission of evidence lies within the sound discretion of the trial court, and we will not reverse such determinations absent abuse of that discretion.[3] "Although hearsay evidence is generally inadmissible, OCGA § 24-3-14 provides an exception for the admission of business records that would otherwise be excluded as hearsay."[4]

To introduce a writing under the business records exception to the hearsay rule, a witness must lay a foundation indicating that he or she is aware of the method of keeping the documents.[5] It is not required that the witness made the records or kept them under his or her supervision or control.[6] Instead, "[t]he witness must be able to testify that the record was made (1) in the regular course of business, and (2) at the time of the event or within a reasonable time of the event."[7] The witness's lack of personal knowledge regarding how the records were created does not render them inadmissible, but merely affects the weight given to the evidence.[8]

Here, the T-Mobile records custodian, Barbara Cooper, offered testimony regarding Hubbs's telephone records. Cooper testified that another custodian at T-Mobile printed out the computerized records in December 2003, and explained that they were kept in the regular course of business. The trial court admitted the records over Santana's objections. Because the copy of the phone records was not entirely legible, the State arranged for T-Mobile to send another copy via facsimile in the midst of Cooper's testimony. After she examined the faxed copy, Cooper confirmed that the document contained Hubbs's telephone records, which were kept in the ordinary course of business. She further confirmed the method for maintaining and printing the records, and the trial court admitted the second copy over Santana's objection.

Cooper's testimony provided the necessary foundation for the phone records to be introduced and admitted into evidence under the business records exception to the hearsay rule.[9] Her lack of personal knowledge regarding how Hubbs's records were actually printed out affected their weight, not their admissibility.[10] For this reason, the trial court did not abuse its discretion in admitting these documents into evidence.

---

[3] See *Jackson v. State*, 252 Ga. App. 268, 272 (4) (555 SE2d 908) (2001).
[4] *Massey v. State*, 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004).
[5] See id.
[6] See id.
[7] Id.
[8] See OCGA § 24-3-14 (c); *Massey,* supra at 155.
[9] See id.
[10] See id.

2. In his next enumeration, Santana contends that the trial court erred by instructing the jury that it could consider an eyewitness's level of certainty about her identification when evaluating its reliability. Although this charge was disapproved by our Supreme Court,[11] we find no harm in the trial court's error.[12] Apart from the identification evidence, there was more than ample other evidence placing Santana at the scene of the robbery, including Dixon's statement to the authorities, Hubbs's telephone records containing records of calls made to Santana's home phone and his girlfriend's residence, the patrol officer's testimony placing Santana and Dixon near the apartment complex minutes after the robbery, and Hubbs's credit card records indicating that her card was used in the times and places described by Dixon. Thus, "we conclude that the 'level of certainty' portion of the trial court's charge was harmless because it is highly probable that the error did not contribute to the judgment."[13]

3. Finally, Santana contends that by charging the jury that "it is your duty to believe the witnesses whom you think are the most believable" during the preliminary instructions, the trial court erroneously reduced the standard of proof from beyond a reasonable doubt to a preponderance of the evidence. "Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence."[14] Here, the trial court clearly advised the jurors multiple times both in its preliminary and final jury charges that the State was required to prove every material allegation of the indictment beyond a reasonable doubt. Thus, we find no error, as "it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence" regarding the standard of proof.[15]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 22, 2007.

*Gerard B. Kleinrock*, for appellant.

---

[11] *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

[12] See *Taylor v. State*, 282 Ga. App. 469, 471 (2) (638 SE2d 869) (2006).

[13] (Punctuation omitted.) *Joyner v. State*, 278 Ga. App. 60, 63 (3) (628 SE2d 186) (2006) (because evidence connected defendant to the crime apart from eyewitness identification, the "level of certainty" portion of jury charge was harmless error); see also *Taylor*, supra; *Hood v. State*, 282 Ga. App. 350, 355 (2) (638 SE2d 807) (2006).

[14] *Phillips v. State*, 278 Ga. App. 198, 204 (3) (628 SE2d 631) (2006).

[15] Id.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.