A06A2090. FAGAN v. THE STATE.
(643 SE2d 268)

ELLINGTON, Judge.

A Fulton County jury found Britton Fagan guilty beyond a reasonable doubt of armed robbery, OCGA § 16-8-41; two counts of aggravated assault, OCGA § 16-5-21; and possession of a firearm during the commission of a felony, OCGA § 16-11-106. On appeal from the denial of his motion for new trial, Fagan contends that he received ineffective assistance of counsel, that the trial court erred in charging the jury, and that the court erred in failing to merge one of his aggravated assault convictions into his armed robbery conviction for sentencing. As explained below, we affirm his convictions, but vacate the judgment in part and remand this case to the trial court for resentencing.

---

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following relevant facts. At approximately 8:00 p.m. on December 29, 1996, a masked man wearing beige pants and a camouflage jacket and armed with a handgun entered a McDonald's restaurant in Atlanta. He ordered the employees to the back of the restaurant. He kicked in the manager's door, disconnected the phone, and ordered the manager to open the safe and the cash register drawers. The cash registers contained cash, coins, and McDonald's gift certificates. The robber stuffed money into his jacket and pockets, then ran out the door. Although the manager never determined exactly how much money was taken during the robbery, she estimated that it was over $2,000.

In the meantime, a citizen notified police officers who were patrolling the area that a robbery was in progress at the McDonald's. The officers saw a man in a camouflage jacket and a ski mask pointing a gun and running out of the side door. The officers commanded the man to halt, but he ran toward a nearby residential area. After pursuing the suspect and firing several shots, the officers lost sight of the man when he scaled a fence.

Moments later, other officers responding to the armed robbery call saw Fagan emerge from between two houses in the same area. He was wearing beige pants, but was not wearing a ski mask or camouflage jacket. Fagan was breathing hard. The officers stopped Fagan and asked him where he was going. They observed large bulges in Fagan's pockets and saw money and other papers hanging out of the pockets. One of the officers testified that Fagan "had so much money that he couldn't stuff it all in his pockets" and "it was all falling out of his pockets." The officers patted him down for weapons, but did not find one. Officers subsequently recovered over $1,300 and McDonald's gift certificates from Fagan's pockets. During a search of the area between where Fagan was apprehended and where the robber had scaled the fence, the officers found a camouflage jacket, ski mask, and gun.

1. Fagan contends he received ineffective assistance of counsel when his trial counsel failed to move to strike a juror for cause.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Fagan does not challenge the sufficiency of the evidence on appeal.

trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

Fagan argues that counsel should have moved to excuse the juror for cause because the juror had a financial interest in the outcome of the case and, therefore, was an interested party. The record shows that, at the time of the trial, the juror was employed by a company that handles workers' compensation, liability, and crime-related claims for several large corporations, including McDonald's Corporation. During voir dire, the juror explained that she takes calls from corporate clients about various types of claims and then directs the claims to the appropriate insurance carriers for processing. She did not know if she had ever handled calls arising from claims by the McDonald's restaurant that was robbed in this case or even if that restaurant was a client of her employer. When asked if there was anything about her relationship with McDonald's that would impact her judgment or how she considered the evidence in this case, the juror answered, "No."

In arguing that the juror should have been removed for cause due to a financial interest in the case, Fagan relies on *Daniel v. Bi-Lo*, 178 Ga. App. 849 (1) (344 SE2d 707) (1986). In *Daniel*, this Court held that

a person is not competent to serve as a juror in a cause when there exists any business relation between himself and one of the parties which may tend to influence the verdict. . . . This rule is applicable to parties who, although not named in the suit, have a financial or other interest in the outcome of the litigation to be tried. . . . [T]he reason for the rule is to eliminate those jurors whose impartiality may be called into question by the existence of a business relationship whereby the juror could be motivated by financial concerns affirmatively or negatively towards a party interested in the outcome of a suit and whose presence on the jury would thus deny the opposing party the right to a fair and impartial jury.

(Citations and punctuation omitted.) Id. at 850-851 (1). In *Daniel,* the juror at issue was an independent insurance adjuster whose clients included one of the companies that insured a defendant in the civil case. Id. at 850 (1). The juror had also previously worked with two other companies which insured other defendants in the same case. Id. As this Court noted,

> [a]n insurance adjuster's livelihood is dependent upon the assignments received from insurance companies such as those defending appellees in the instant suit. Thus, insurance adjusters have a pecuniary interest, albeit an indirect interest, in the result of the case as affecting the source of their incomes.

Id. at 851 (1). Therefore, we found that the trial court erred in refusing to disqualify the juror for cause in that case. Id. at 852 (1).

In contrast to *Daniel,* the instant case is a criminal case in which neither McDonald's nor the juror's employer is a party. See *Burgess v. State,* 264 Ga. 777, 781 (8) (450 SE2d 680) (1994) (the motel where the murders at issue took place was neither a victim nor party to the case); *Willingham v. State,* 198 Ga. App. 178, 178-179 (2) (401 SE2d 63) (1990) (in a criminal case, only the defendant and the State are parties). Further, the employer was not an insurer of McDonald's, and there is nothing in the record to even suggest that the outcome of this case would have had any financial impact on the juror or her employer. Under the circumstances, Fagan has failed to show that the juror had a financial interest in the outcome of the case or some other basis that disqualified her from serving on the jury. See *Burgess v. State,* 264 Ga. at 781 (8) (juror was not automatically disqualified from serving on the jury in a murder trial, even though his wife was the desk clerk of the motel at the time of the murders and was the motel's manager at the time of the trial); *Willingham v. State,* 198 Ga. App. at 178-179 (2) (in a criminal case involving theft of books from a university library, employees of the university were not automatically disqualified from serving on the jury). Consequently, counsel was not deficient for failing to move to strike the juror, and Fagan's claim that this failure constituted ineffective assistance must fail.

2. Fagan contends his trial counsel was ineffective because counsel requested the pattern jury charge on witness identification, which instructed the jury to consider "the level of certainty demonstrated by the witness as to his or her identification" when assessing the reliability of the identification. In June 2005, a year after the trial in this case, the Supreme Court of Georgia ruled that giving the "level of certainty" pattern instruction constituted reversible error when the only evidence linking the defendant to the crime was eyewitness

testimony. *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005). Fagan argues that trial counsel should have anticipated this ruling, that counsel's request for the instruction constituted deficient performance, and that he (Fagan) was prejudiced by counsel's error.

Pretermitting whether counsel erred in requesting the instruction, Fagan has failed to show that he was prejudiced as a result. In this case, two eyewitnesses testified that the ski mask and jacket recovered by officers looked like those the robber was wearing, and both later identified Fagan as the robber. One of those witnesses had seen part of Fagan's face when he pulled up the ski mask during the robbery. The other, the restaurant's manager, knew Fagan because Fagan had worked at the restaurant for two or three months. The State did not rely on eyewitness identification evidence alone, however. It also showed that police officers apprehended Fagan moments after other officers saw the robber scale a nearby fence, and Fagan had $1,300 and McDonald's gift certificates stuffed in his pockets when he was apprehended. In addition, officers discovered a camouflage jacket, ski mask, and handgun in the area between the fence scaled by the robber and the yard where Fagan was apprehended.

Given the other evidence linking Fagan to the crime apart from the eyewitness identifications, the "level of certainty" portion of the identity charge was harmless because it is highly probable that the error did not contribute to the jury's verdict. See *Creamer v. State*, 282 Ga. App. 411, 412 (638 SE2d 832) (2006) (the "level of certainty" instruction was harmless when, in addition to eyewitness testimony identifying the defendant as the shooter in a drive-by shooting, the State presented witnesses who described the car in which he was riding, identified the driver, and provided other corroborating evidence); *Joyner v. State*, 278 Ga. App. 60, 63 (3) (628 SE2d 186) (2006) (the "level of certainty" instruction was harmless when, in addition to an eyewitness identification, there was evidence that the defendant was in the store at the time of the crime, he fled on foot when he saw officers, and his wife found a substantial amount of cash in his car). Accordingly, Fagan has failed to show that he was prejudiced by the charge, and his ineffective assistance claim on this basis must fail.

3. Fagan contends the trial court erred when it charged the jury that "if you cannot unanimously agree upon a verdict, the Judge is required by law to declare a mistrial and retry the case before another jury." The court gave this instruction as part of its general charge to the jury, prior to the start of deliberations. There is nothing in the record to indicate that the jury ever indicated to the court that it was having difficulty reaching a unanimous verdict.

Pretermitting whether the instruction was error when given prior to the start of deliberations,[2] the question remains whether the instruction was so coercive as to cause a juror to "abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (Citation and punctuation omitted.) *Widner v. State*, 280 Ga. 675, 678 (3) (631 SE2d 675) (2006). In *Widner*, the judge gave the same instruction after the jury foreman reported that the jury was unable to reach a unanimous verdict. Id. The Supreme Court of Georgia found that the judge, "though firm in admonishing the importance of juries making verdicts, was careful not to intimate or express any opinion as to the propriety of any particular verdict, nor did he make any suggestion tending to coerce any particular group of jurors to agree with the others." (Citation and punctuation omitted.) Id. Therefore, the instruction did not constitute reversible error. Id.

The same is true in this case. Fagan cites to nothing in the transcript that would support a finding that the judge indicated that a particular verdict was appropriate or that the jurors were pressured to abandon their opinions or otherwise coerced in order to reach a unanimous verdict. Accordingly, Fagan has failed to demonstrate reversible error. *Widner v. State*, 280 Ga. at 678 (3).

4. Fagan argues that the court erred when it charged the jury that "[n]o person shall be convicted of any crime unless and until each element of the crime is proven beyond a reasonable doubt and to a moral and reasonable certainty" and that "[a] moral and reasonable certainty is all that can be expected in a legal investigation." Fagan argues that this instruction impermissibly suggested a lower standard of proof than due process requires.

The transcript shows that the court properly charged the jury on the presumption of innocence, the burden of proof, and reasonable doubt. In *Brown v. State*, 264 Ga. 48, 49-50 (3) (a) (441 SE2d 235) (1994), the Supreme Court of Georgia held that "[w]here, as here, the jury charge properly defined reasonable doubt, a reference to a 'moral and reasonable certainty' did not lessen the burden of proof necessary to obtain a conviction, and therefore did not violate the Due Process Clause." (Citations and footnote omitted.) See also *Armstrong v. State*, 265 Ga. 18, 19 (3) (453 SE2d 442) (1995) (accord). Accordingly, we find no error.

5. Finally, Fagan argues that the trial court erred in failing to merge his conviction on one count of aggravated assault into the

---

[2] See *Mangum v. State*, 274 Ga. 573, 578 (3) (b) (555 SE2d 451) (2001) (disapproving the charge in a similar context, noting that "the challenged instruction ... was certainly premature and an inaccurate statement of the law in a circumstance where the State elects not to pursue a retrial following mistrial resulting from a hung jury").

armed robbery. We agree. Count 1 of the indictment charged that Fagan committed armed robbery by taking cash from the manager by use of a handgun with the intent to commit a theft. Count 2 charged him with aggravated assault based upon allegations that he pointed a handgun, a deadly weapon, toward the manager and demanded money from her. We have reviewed the record and conclude that both counts were based upon the same conduct, i.e., pointing a handgun at the manager in order to commit a robbery.

During the motion for new trial hearing, the State essentially conceded that the two convictions should have been merged for sentencing. Moreover, not only has the State failed to offer any reason on appeal that these convictions should not have been merged, it did not even address this enumerated error in its responsive brief. We find Count 2 merged into Count 1 as a matter of fact. Consequently, we vacate the sentences for Counts 1 and 2 and remand the case to the trial court to merge these two counts and to resentence Fagan on Count 1. *Maddox v. State*, 277 Ga. App. 580, 582 (627 SE2d 166) (2006) (offenses merged as a matter of fact when the assault with a handgun was completed in conjunction with the armed robbery).

*Judgment affirmed in part and vacated in part and case remanded for resentencing. Johnson, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 28, 2007.

*Steven E. Phillips*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.