A07A0940. RABIE v. THE STATE.
(649 SE2d 868)

PHIPPS, Judge.

A jury found Rabie Ali Rabie guilty of armed robbery, theft by receiving stolen property, and speeding. Rabie appeals, challenging the admission of his custodial statement to police. He also claims that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

Viewed favorably to the jury's verdict,[1] the evidence shows that around 11:00 p.m. on January 9, 2004, Cassandra Brice was driving home from work when a red Jeep Cherokee occupied by two individuals blocked her path. A man wearing a black skull cap and gloves exited the passenger side of the Jeep and approached her car. Thinking he needed directions, Brice rolled down her car window. The man then pointed a gun at her and took her purse. Although Brice did not clearly see the man's face, which was covered with a scarf, she noticed that the Jeep had a Douglas County license tag.

Several days later, a man wearing a hooded sweater tried to enter a pizza restaurant just after it had closed. When the owner told him the restaurant was closed, he walked to a red Jeep Cherokee parked nearby. Suspicious, the owner reported the Jeep's license tag number to police, who determined that the tag was stolen.

A short time later, Deputy Lane Thompson of the Douglas County Sheriff's Office spotted the red Jeep Cherokee entering Interstate 20. Rabie, who owned the Jeep, was driving, and his brother was in the front passenger seat. After the Jeep accelerated to speeds over 100 mph, Thompson activated his blue lights and stopped the Jeep.

---

[1] See *Santana v. State*, 283 Ga. App. 696 (642 SE2d 390) (2007).

The license plate on the Jeep was a Douglas County tag reported stolen on January 7, 2004. Inside the Jeep, police discovered several items that had been in Brice's purse when she was robbed, including her cell telephone and driver's license. The Jeep also contained two guns, two hats, and a pair of gloves. Brice identified one of the guns, the hats, and the gloves as similar to items used during the robbery. She further identified the Jeep as identical to the vehicle used by the robbers.

Officers searching the Jeep also found a receipt indicating that at 10:30 p.m. on January 9, 2004 — approximately 30 minutes before Brice was robbed — food was purchased at a fast-food restaurant located near the robbery scene. The cashier who worked at the restaurant's drive-through testified that she recalled selling food that night to Rabie's brother, who was driving a red Jeep. She further stated that another person was in the vehicle, but that she could not identify the person.

1. After his arrest, Rabie executed a *Miranda* waiver at the police station and gave a statement to the investigating detective. Rabie objected to the admissibility of this statement at trial, arguing that before he arrived at the station, he invoked his right to counsel, which should have cut off all police questioning. The trial court overruled the objection, concluding that Rabie reinitiated contact with police following his request for counsel.

Once "the right to counsel ha[s] been asserted by an accused, further interrogation of the accused should not take place unless the accused himself initiates further communication, exchanges, or conversations with the police."[2] Even when a suspect unequivocally requests counsel, thus cutting off all police-initiated interrogation, the suspect "may be interrogated further *if* he (a) initiates further discussions with the police and (b) knowingly and intelligently waives his *Miranda* rights."[3] We will uphold the trial court's factual determinations regarding the admissibility of a custodial statement — including whether the defendant reinitiated contact with police after invoking the right to counsel — unless they are clearly erroneous.[4]

Shortly after Rabie's arrest, officers placed him in a patrol car, where he was recorded by the in-car video camera. The resulting videotape shows that Rabie clearly invoked his right to counsel. But he subsequently asked an officer to "please tell [him] what's going on," and he responded to an officer's request for his name by stating that

---

[2] *Oregon v. Bradshaw*, 462 U. S. 1039, 1044 (103 SC 2830, 77 LE2d 405) (1983) (citation and punctuation omitted).

[3] *Brockman v. State*, 263 Ga. 637, 639 (1) (b) (436 SE2d 316) (1993).

[4] *Tesfaye v. State*, 275 Ga. 439, 441 (2) (569 SE2d 849) (2002); *White v. State*, 255 Ga. 210, 212 (2) (336 SE2d 777) (1985).

he was cooperative. He also begged officers not to impound the Jeep, asserting: "I'll do whatever I can to help you." In addition, he questioned whether his mother would be called, stated that he did not want his mother "to think there is a problem," asked about the charges against him, and asserted that he knew nothing about the stolen license plate. He later volunteered that he was sorry for causing trouble.

Once at the police station, the investigating detective read the *Miranda* rights to Rabie, who signed a *Miranda* waiver form. The detective testified that Rabie communicated well with him, had completed high school, and appeared to understand his *Miranda* rights. The detective further testified that he made no threats or promises to Rabie, who indicated that he wished to speak with the detective. Based on the videotape and other evidence, the trial court concluded that although Rabie initially invoked his right to counsel, he then reinitiated contact with police, waived his *Miranda* rights, and voluntarily gave a statement. We find no error.

The evidence demonstrates that after requesting counsel, Rabie made numerous unsolicited statements to police, including that he knew nothing about the stolen license plate, that he would do whatever he could to help the officers, and that he wanted information about the charges against him. Such statements support the trial court's conclusion that Rabie reinitiated contact with police and voluntarily opened a dialogue regarding the investigation.[5] The evidence also supports the determination that Rabie then knowingly and intelligently waived his *Miranda* rights.[6] Accordingly, the trial court properly admitted Rabie's custodial statement to police.

2. Rabie also argues that he received ineffective assistance of counsel at trial. Specifically, he contends that based on trial counsel's jury charge request, the trial court gave the pattern jury charge on eyewitness identification, which, at that point, contained language instructing the jury to consider the witness's "level of certainty" in assessing the reliability of the identification. As Rabie notes, approximately six months after the trial of this case, the Supreme Court of Georgia disapproved the "level of certainty" language.[7]

To succeed in his ineffective assistance claim, Rabie must demonstrate " 'both that counsel's performance was deficient and that the

---

[5] See *Bradshaw*, supra at 1045-1046 (after invoking right to counsel, suspect reinitiated contact with police by asking " 'what is going to happen to me now?' "); *Brockman*, supra at 638-639 (suspect reinitiated contact with police by inquiring about the evidence in the case and asserting that statements made by other suspects should be discounted).

[6] See *Tesfaye*, supra; *Brockman*, supra.

[7] See *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

deficient performance was prejudicial to his defense.' "[8] Pretermitting whether requesting a subsequently disapproved jury charge constitutes deficient performance,[9] Rabie cannot show prejudice.

In *Brodes v. State*, the Supreme Court disapproved the "level of certainty" language and found inclusion of the language harmful error, given the facts of that case.[10] With respect to harm, the Court noted that "the only evidence connecting [the defendant] to the crimes was the eyewitness identification of him by the two victims."[11] Since *Brodes*, we have deemed the "level of certainty" language harmless in cases where other evidence connected the accused to the crime.[12] Such is the case here.

The state presented evidence that did not involve eyewitness identification of the alleged perpetrator. For example, Brice testified that she was robbed by men in a red Jeep Cherokee with a Douglas County license tag. Rabie owned and was driving such a vehicle at the time of his arrest several days later, and a search of his Jeep revealed numerous items belonging to Brice, as well as a gun that Brice recognized from the robbery. This evidence linked Rabie to the crime.

Moreover, the identification testimony presented by the state did not directly implicate Rabie. The fast-food cashier identified Rabie's brother as the driver of the red Jeep who purchased food on January 9, 2004. She could not identify the Jeep's passenger, and she testified that she did not recognize Rabie. Similarly, although Brice vaguely identified Rabie's brother as the Jeep's driver, Rabie has cited no portion of the transcript in which Brice specifically testified before the jury that Rabie was the man who robbed her.[13]

Thus, not only did the state offer other evidence tying Rabie to the robbery, the eyewitnesses did not identify him as the robber. Under these circumstances, inclusion of the "level of certainty language" was harmless "because it is highly probable that the error did not contribute to the judgment."[14] Accordingly, Rabie has not shown that he was prejudiced by the charge, and he cannot prevail on his ineffective assistance claim.[15]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[8] *Rickman v. State*, 277 Ga. 277, 279 (2) (587 SE2d 596) (2003) (footnote omitted).

[9] We note that "in making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law." Id. at 280 (punctuation and footnote omitted).

[10] See *Brodes*, supra.

[11] Id.

[12] See *Santana*, supra at 699 (2); *Waddell v. State*, 277 Ga. App. 772, 778-779 (5) (627 SE2d 840) (2006).

[13] Brice apparently identified Rabie as the robber prior to trial, but the state agreed not to present evidence of this pretrial identification to the jury.

[14] *Santana*, supra at 699 (punctuation and footnote omitted); see also *Waddell*, supra.

[15] See *Fagan v. State*, 283 Ga. App. 784, 788 (2) (643 SE2d 268) (2007).

DECIDED JULY 19, 2007 —

*Garland, Samuel & Loeb, Donald F. Samuel*, for appellant.
*David McDade, District Attorney, James E. Barker, James A. Dooley, Assistant District Attorneys*, for appellee.