## S96A1581. WRIGHT v. THE STATE.
(480 SE2d 13)

FLETCHER, Presiding Justice.

A jury found Edward Wright guilty of felony murder in the shooting death of Gregory Mathis and guilty of aggravated assault in the shooting of Marcus Durrah.[1] Wright appeals, contending that his trial counsel was ineffective. Because his counsel's actions did not prejudice Wright, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence showed that Gregory Mathis, Marcus Durrah, and Roderick Harris were standing beside a parked car talking one evening. Julian Brown and Kenya Joyner were inside the car listening to music. Edward Wright approached the group, carrying a pistol, and began cursing at Durrah because earlier that evening Durrah had attempted to buy drugs from Wright at the home Wright shared with his grandmother. Wright was angry because he did not want people approaching his grandmother's house to buy drugs. Wright almost immediately began firing; he discharged three shots, one into the pavement, one struck Durrah and the other struck Mathis. When Wright's gun jammed, Durrah got into the back of the car with Brown and Joyner, and they drove away. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Wright guilty of the crimes charged beyond a reasonable doubt.[2]

2. (a) On appeal, Wright contends that his counsel's action in calling Joyner as a witness and then becoming a witness constituted ineffective assistance of counsel. Wright called Joyner to the stand as his first witness. Joyner testified that she was sitting on the passenger side of the car and that when she heard shots coming from behind the car, she ducked and did not see who did the shooting. This testimony was consistent with the statement she gave to police the night of the shooting and was consistent with the state's three eyewitnesses. She also testified that Wright and others offered her money to lie for Wright. Finally, she testified that she informed defense counsel in January 1994 that Brown had killed Mathis by running him over with the car.

Defense counsel then took the stand. He testified that Joyner

---

[1] The crimes occurred on May 30, 1993. The grand jury indicted Wright on September 14, 1993. Following a trial before a magistrate judge, Wright was sentenced on April 20, 1995 to life imprisonment for felony murder and to a consecutive 20-year term for the aggravated assault on Durrah. Wright filed a motion for new trial on May 12, 1995, which was amended on May 16, 1996, May 21, 1996, May 24, 1996 and May 28, 1996. The motion was denied on May 29, 1996. Wright filed his notice of appeal on May 29, 1996; it was docketed in this Court on June 27, 1996 and oral argument was had on October 21, 1996.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

had called him in January 1994 and said that Brown was sitting in the passenger side of the car and that he reached out around the windshield and shot Mathis. Counsel also testified that he called the district attorney with this information and asked him to investigate and that he (defense counsel) did no further investigation of her story.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[3] Trial counsel did not testify at the motion for new trial hearing. Therefore, a critical element for the proper assessment of counsel's conduct is missing.[4] A review of the record suggests, nevertheless, that calling Joyner as a witness for the defense may well have fallen below an objective standard of reasonableness.

Joyner called counsel several months after Wright's indictment and over a year before trial. Counsel conducted no investigation to determine if Joyner's story could be corroborated by others. Instead, counsel simply asked the district attorney to investigate. The record reveals that prior to trial he knew that Joyner had reverted to her original story and that she would also testify that Wright offered her money to lie for him. Finally, even the story Joyner told counsel in January 1994 was not consistent with the defendant's own testimony, because he claimed she was not present.

Assuming without deciding that this satisfies the deficiency prong of *Strickland*, Wright's claim must still fail because he has not met the prejudice prong.[5] The consistent testimony of the other three eyewitnesses provided overwhelming evidence of Wright's guilt and, therefore, Wright has not established that he was prejudiced by Joyner's testimony.

(b) Whether the conflict inherent in counsel's dual role as advocate and witness constituted ineffective assistance of counsel is to be evaluated under the *Strickland* standard, rather than *Cuyler v. Sullivan*,[6] which is reserved for conflicts arising from multiple representation.[7] Under the circumstances of this case, counsel's taking the witness stand was contrary to DR 5-102, which provides that "except when essential to the ends of justice a lawyer should avoid testifying in court in behalf of his client."[8] The ABA Standards for Criminal Justice propose one way of handling this problem by stating that,

[u]nless the lawyer for the accused is prepared to forgo

---

[3] *Strickland v. Washington*, 466 U. S. 668, 689 (104 SC 2052, 80 LE2d 674) (1984).
[4] Id. at 691.
[5] Id. at 687.
[6] 446 U. S. 335 (100 SC 1708, 64 LE2d 333) (1980).
[7] *Beets v. Scott*, 65 F3d 1258 (5th Cir. 1995).
[8] See also EC 5-9 ("The roles of an advocate and of a witness are inconsistent.").

impeachment of a witness by the lawyer's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present such impeaching testimony, the lawyer should avoid interviewing a prospective witness except in the presence of a third party.[9]

Considering all the circumstances of this case, we conclude that counsel's conduct in acting as both witness and advocate was improper. Wright, however, has not demonstrated prejudice from counsel's action.

3. We have reviewed Wright's remaining enumerations of error and find no reversible error.[10]

*Judgment affirmed. All the Justices concur, except Benham, C. J., and Carley, J., who concur in Divisions 1, 2 (a), 3 and the judgment.*

DECIDED JANUARY 21, 1997 —
RECONSIDERATION DENIED FEBRUARY 14, 1997.

*Megan C. DeVorsey,* for appellant.
*Lewis R. Slaton, District Attorney, John C. Culp, Assistant District Attorney, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

---

[9] ABA Standards for Criminal Justice, Standard 4-4.3 (d) (2d ed. 1986).

[10] Wright contends his counsel was ineffective because he failed to impeach the state's witnesses with their prior felony convictions; failed to serve the state with notice of intent to introduce evidence of prior difficulties between Wright and Durrah; failed to request a charge clarifying transferred intent; and failed to request a verdict form that conformed to the jury charge. Wright also contends that the state and a witness improperly referred to him as a drug dealer; that the trial court failed to charge that the defense of justification would transfer to the accidental shooting of an unseen person; that the trial court's sequential charge violated *Edge v. State,* 261 Ga. 865 (414 SE2d 463) (1992); and the trial court erred in allowing the jury to use the original indictments as verdict forms since they did not enumerate each possible verdict.