## A05A0616. FORD v. THE STATE.
(617 SE2d 262)

RUFFIN, Chief Judge.

A jury found Jason Ford guilty of pimping, contributing to the delinquency of a minor, and sexual exploitation of a minor. On appeal, Ford contends that the trial court erred in admitting certain similar transaction evidence, in engaging in certain "ex parte" communications with jurors, and in overruling his *Bruton* objection. Ford also argues that the trial court erred in failing to grant a mistrial after the prosecutor engaged in improper closing argument. Finally, Ford asserts that he received ineffective assistance of counsel. For reasons that follow, we disagree and affirm.

Viewed in a light most favorable to the verdict, the evidence shows that Ford met 16-year-old C. W. in June or July 2002 through her friend, N. N. Thereafter, C. W. and N. N. went to Ford's apartment, where the two girls, Ford, his roommate, and Jon and Sylvie Wubbena sat in a hot tub. While in the hot tub, Sylvie Wubbena asked the girls how old they were and learned that they were only 16. The Wubbenas subsequently discussed their concerns with Ford about him spending time with minors.

A week or two later, Ford visited C. W. at her home in order to take pictures of her. According to C. W., Ford told her about his "escorting business," which he approached her about joining. Ford explained to

C. W. that she could net $200 per hour in exchange for sexual acts. C. W. agreed, and Ford then took promotional photographs of her with a digital camera.

In addition to his escorting business, Ford and Jon Wubbena operated an adult website named Atlantagangbang.com (AGB). On July 27, 2002, AGB, as well as several other adult entertainment groups, hosted a party at the Zinc Club that included a live sex show, featuring a woman named Amanda Jones. The party was advertised on AGB's website. Ford invited C. W. to the party, which she understood would "be a gang bang party for [Ford's] website."

The night of the party, Ford told C. W. that he had shown her picture to prospective clients who were interested in meeting with her. C. W. testified that Ford gave her "about $270" as an investment in her future escorting services.

While at the party, C. W. spoke with Jones, the woman who was to be featured in the live sex show. Jones asked C. W. if she would participate in the show, and she agreed. Jones indicated that she would check with Ford about C. W.'s participation. Before the start, Ford motioned to C. W. and asked if she "was ready." Two undercover police officers witnessed Ford gesture to C. W. before the performance began. The show then commenced. In front of a crowd of approximately 100 people, C. W. performed cunnilingus on Jones after which Jones engaged in various sexual acts with multiple men while C. W. watched.

The uniformed police officers then arrived, and all the attendees were arrested. Ford subsequently was charged with and convicted of pimping, contributing to the delinquency of a minor, and sexual exploitation of a minor.[1]

Ford appeals, and in a seventy-eight-page brief — which exceeds the maximum allowable brief length by more than twenty-five pages[2] — he alleges six separate claims of error, two with multiple subparts. As Ford's brief was not returned to him timely in order to redact and recast such document so as to comply with the rules of this Court, we have attempted to address all of Ford's claims. To the extent that we may have fallen short of our goal to address every single argument and/or subargument, Ford will not be heard to complain. Indeed, given his blatant violation of this Court's rules, it would have been within our authority to dismiss the appeal entirely.[3]

1. At trial, the State tendered evidence of a similar transaction in which Ford allegedly solicited S. F., a 14-year-old girl, for improper

---

[1] Jones also was charged with several offenses, and she was tried jointly with Ford.

[2] See Court of Appeals Rule 24 (f).

[3] See Court of Appeals Rule 7.

purposes. Detective Larry Smith and Sergeant Thomas Keller of the Las Vegas, Nevada Police Department testified that, in February 2001, they were called to the minor's residence to investigate a possible crime. Apparently, S. F. was logged onto a computer and was using an "internet chat room" to converse with Ford.[4] When the on-line conversation became inappropriate, police were called. Later that day, Keller logged onto a computer under S. F.'s moniker to determine whether Ford was still on-line, and he had an on-line "chat" with Ford while posing as S. F. During this chat, Keller clarified that Ford had offered to pay $4,000 for S. F. to appear in a sexually explicit movie.

At the hearing, the State attempted to introduce the entire transcript from the on-line chat sessions, including the portion of the transcript that was made before Smith and Keller arrived. The trial court ultimately separated the transcript into two parts: A, which was the on-line chat between Ford and S. F.; and B, which represented the chat between Ford and Keller, posing as S. F. Since Keller was present, the trial court ruled that portion B of the transcript was admissible after the State laid the proper foundation. Because S. F. was not present, however, the trial court excluded Transcript A. Nonetheless, when Smith was asked on direct examination whether Transcript A indicated S. F.'s age, the trial court permitted Smith to answer over Ford's objection. On appeal, Ford argues that the trial court erred in admitting Transcript B absent a proper foundation. We disagree.

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard.[5] And we find no abuse of discretion in the trial court's decision to admit the transcript from the real-time chat session between Ford and Keller. Although we are aware of no Georgia case directly on point, we find this situation analogous to the admission of a videotape, which "is admissible where the operator of the machine which produced it, or one who personally witnessed the events recorded[,] testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred."[6] Here, Keller personally witnessed the real-time chat recorded in Transcript B as it was taking place, and he testified that the transcript accurately represented the on-line conversation.[7]

---

[4] An "internet chat room" is a program that allows computer users to engage in typed conversations with other computer users in real time.

[5] See *Almond v. State*, 274 Ga. 348, 349 (3) (553 SE2d 803) (2001).

[6] (Punctuation omitted.) *Hudson v. State*, 273 Ga. 124, 127 (3) (538 SE2d 751) (2000).

[7] Moreover, Ford subsequently gave a statement to Nevada police in which he admitted engaging in the on-line chat.

Under these circumstances, Keller's testimony was tantamount to that of a witness to an event and was sufficient to authenticate the transcript.[8]

To the extent Ford argues that the trial court erred in permitting Smith to answer questions pertaining to Transcript A, we find no reversible error. The critical question pertained to whether Ford knew that S. F. was a minor. However, it was clearly established in Transcript B that S. F. was only 14, and Ford admitted in his statement that he knew she was a minor. Thus, assuming that the trial court erred, such error was harmless as the evidence was merely cumulative.[9]

2. During deliberation, the jury sent two notes to the trial court. In the first one, the jury requested to rehear the testimony of C. W. and a detective. In the second, the jury asked for a legal definition of the term "items of value." The trial court responded to both notes in writing. To the first, the judge wrote that the testimony was not to be repeated and that the jurors were charged with recalling the testimony of the witnesses. To the second, the judge responded by writing that

[a]s it relates to the [p]imping statute, there is no "legal" definition for "items of value" as it relates to prostitution. It is intended to clarify that the exchange of a sexual act (or offer or consent to perform) is not just limited to *money*. It also includes "items of value." It is a term of common meaning.

The colloquy that took place regarding the rehearing of testimony was apparently not recorded. However, a discussion was had, on record, before the trial court sent the second response, and Ford's attorney clearly was present for this exchange. During the discussion, the trial court expressed concern that her writing was illegible, and she instructed the bailiff to read the second response to the jurors.

According to Ford, he was not present when the jurors' notes were delivered. Thus, he contends that the trial court's procedure in this regard violated his right to be present for all stages of the trial. He further argues that it was impermissible for the bailiff to relay such material information to jurors.

---

[8] See id.

[9] See *Flanders v. State*, 279 Ga. 35, 39-40 (7) (609 SE2d 346) (2005).

As our Supreme Court has noted, "[i]t is a well-established rule of law that a defendant on trial must be present when the court takes any action materially affecting his case."[10] Accordingly,

> the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused (for instance, to hasten a verdict against him, or to induce jurors who might be for him to yield their convictions); and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial, and the accused would be entitled to another trial.[11]

Here, we fail to see how the allegedly improper communication could have been prejudicial to Ford, and he makes no cogent argument in this regard. Neither response urged jurors to hasten their verdict or yield their convictions. To the contrary, the second response dealt essentially with a jury charge, which the Supreme Court has concluded is *not* a critical stage of the trial such that a defendant's presence is constitutionally required.[12] And the first response — denying jurors access to transcripts and exhorting them to rely upon their recollection of the evidence — was of a type that has been held to be harmless.[13] Under these circumstances, we find the alleged impropriety harmless.[14]

Similarly, we disagree with Ford's contention that the bailiff engaged in improper conduct. While it is true that "[u]nder no circumstances may a bailiff answer jury questions related to the jury's decision-making process based on the bailiff's perception of the question, the law, or the evidence[,]"[15] that is not what transpired

---

[10] *Burtts v. State*, 269 Ga. 402, 403 (3) (499 SE2d 326) (1998).

[11] (Punctuation omitted.) Id.

[12] See *Huff v. State*, 274 Ga. 110, 111-112 (2) (549 SE2d 370) (2001).

[13] See *Burtts*, supra at 403-404.

[14] See id.; *Benton v. State*, 271 Ga. App. 207, 209-212 (2) (609 SE2d 163) (2005).

[15] *Turpin v. Todd*, 271 Ga. 386, 389 (519 SE2d 678) (1999).

here. Rather, the only information the bailiff relayed to jurors was that expressly authorized by the trial court, which is permissible.[16]

3. Ford also contends that the trial court erred in overruling his *Bruton*[17] objection.[18] Specifically, Ford contends that C. W.'s testimony in which Jones told her that she would check with Ford to see if C. W. could participate during the sex party implicated him, and thus violated *Bruton*. We disagree.

"A *Bruton* violation occurs when a co-defendant's confession or statement inculpating the defendant is considered by the jury as evidence against the defendant, who was not a party to the confession."[19] Furthermore,

> because *Bruton* is grounded in a defendant's right of confrontation, and because *Bruton* was a case in which a co-defendant's confession implicating Bruton was not admissible against Bruton under any recognized exception to the rule against hearsay, it has been held that *Bruton* has no application when a statement by a defendant's partner in crime is received under some exception to the hearsay rule.[20]

Here, Jones' statement that she would check with Ford regarding C. W.'s participation is clearly part of the res gestae, rather than a confession or statement.[21] Thus, its admission did not violate *Bruton*.[22]

4. Ford contends that the trial court erred in failing to grant a mistrial after the prosecutor made improper statements in closing argument. During closing, the prosecutor noted that "Ford didn't testify." Ford's attorney promptly objected, and the trial court sustained the objection, told jurors that the remark was "inappropriate," and instructed jurors that

> [t]he defense is under no obligation to put on any evidence. . . . The burden never shifts from the State to the

---

[16] See *Hollis v. State*, 191 Ga. App. 525, 525-526 (1) (382 SE2d 145) (1989).

[17] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[18] The State apparently failed to proofread its brief, as its response to this enumeration of error consists of less than two sentences, with the latter ending in a sentence fragment. The truncated section contains no argument, citation of authority, or citation to the record. Given the length of the transcript and the complexity of the issues raised, this Court would have been better served by the State's greater attention to detail.

[19] *Sampson v. State*, 279 Ga. 8, 9 (2) (608 SE2d 621) (2005).

[20] (Punctuation and footnotes omitted.) *Burgess v. State*, 278 Ga. 314, 315 (1) (602 SE2d 566) (2004).

[21] See id.; *Jackson v. State*, 255 Ga. App. 279, 281-282 (2) (564 SE2d 865) (2002) (statements made while the incident was actually in progress constitute res gestae).

[22] See *Burgess*, supra.

defendant. The defendant in addition has an absolute constitutional right not to testify, and . . . you can't draw any inferences, directly, indirectly, harmful, hurtful, adverse [to him] in any way. . . . [Ford's attorney] has no obligation to put on any evidence[,] and any statement by [the prosecutor] to the contrary would be inappropriate, ill advised, and not to be considered by you.

On appeal, Ford contends that this instruction was insufficient and that the trial court was required to grant a mistrial. Again, we disagree. Although improper, a comment on a defendant's silence does not necessarily require reversal.[23] "The grant or denial of a mistrial is within the trial court's sound discretion, and we will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial."[24] Here, given the trial court's prompt, detailed curative instruction to the jury, we find it unlikely that the prosecutor's statement prejudiced Ford.[25] Accordingly, the trial court did not abuse its discretion in denying the mistrial.[26]

5. In two enumerations of error, Ford contends that his trial counsel rendered ineffective assistance. Specifically, he asserts that counsel labored under an actual conflict, which warrants a new trial. He further argues that his lawyer's failure to object to hearsay constituted ineffective assistance.

Ford's lawyer claimed that, prior to trial, he called C. W. to discuss her testimony. Upon answering the phone, C. W. asked counsel to tell Ford that she was "sorry." When asked why, C. W. responded, "well, [Ford] didn't know I was 16." After hearing this, counsel added himself to the witness list. The State then moved to disqualify counsel, asserting that he could not serve as both lawyer and witness. In the alternative, the State sought a ruling that counsel be excluded as a witness.

The trial court agreed with the State that the lawyer could not serve as both a witness and an advocate. The trial court gave counsel the choice of whether to disqualify himself as Ford's counsel or to remove himself from the witness list. Recognizing that withdrawing from representation would work a hardship on his client, counsel opted to remove himself as a witness in the case. Ultimately, the trial court permitted Ford's attorney to ask C. W. whether she had made

---

[23] See *Knolton v. State*, 268 Ga. App. 78, 79-80 (601 SE2d 467) (2004).
[24] (Punctuation omitted.) Id.
[25] See id.
[26] See id.

the statement to him about Ford not knowing that she was only 16. When counsel asked the question, C. W. responded, "And then I said no comment, I wasn't going to answer your questions."

(a) Ford argues that if an attorney may be called as a potential witness, then the attorney has an actual conflict of interest and can no longer represent the defendant. According to Ford, his counsel was hampered by an actual conflict and thus rendered ineffective assistance.

"A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous."[27] Here, the trial court found that Ford's counsel "made the reasonable tactical decision to forego additional, cumulative impeachment of [C. W.] by not withdrawing and remaining as the experienced advocate moving forward with Mr. Ford's pending demand for a speedy trial." Accordingly, the trial court found that counsel did not render ineffective assistance. This finding is not clearly erroneous.

Ford essentially contends that, given the actual conflict, his attorney could not reasonably decide to continue representation. We disagree. As this Court recently held, "[b]y actual conflict, the law means more than the bare possibility that a conflict may have developed. The conflict must be palpable and have a substantial basis in fact."[28] In this case, counsel at most could have provided additional evidence to impeach C. W.'s testimony. As noted by the trial court, however, the record contained other evidence that tended to impeach the girl's credibility, including that she initially lied to police, to her friends, and to her parents; that she had lied to other partygoers regarding her age; and that she had stolen from her parents, who had her arrested. In view of the ample impeachment evidence, trial counsel could reasonably conclude that his additional testimony was not substantial enough to warrant his withdrawal from the case; in other words, that the conflict was not palpable.

Moreover, had the trial court disqualified counsel, it would have implicated Ford's right to freely chosen counsel; "an important interest which requires that any curtailment . . . be approached with great caution."[29] The record shows that the attorneys, the trial court, and Ford were aware of the conflict.[30] Nonetheless — for tactical reasons — counsel opted to continue representation and withdraw his name

---

[27] (Punctuation omitted.) *Miller v. State*, 271 Ga. App. 524, 526 (3) (610 SE2d 156) (2005).

[28] (Footnotes omitted.) *Burns v. State*, 274 Ga. App. 687, 690 (1) (618 SE2d 600) (2005).

[29] *Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981).

[30] It is unclear from the record whether Ford was present when the State's motion to disqualify was argued. He was, however, present at trial when the issue of counsel's inability to fully cross-examine C. W. was discussed at some length.

from the witness list. And Ford and his trial counsel certainly were in the best position to balance the competing interests and determine that counsel should remove his name from the witness list rather than withdraw from representation and testify. Under these circumstances, the trial court's conclusion that, in so doing, counsel rendered effective assistance is not clearly erroneous.

(b) In several related arguments, Ford asserts that, under the *Strickland*[31] standard, his attorney's failure to withdraw from representation warrants a new trial. We disagree.

To prevail on his claim of ineffective assistance under *Strickland*, Ford must show both that his counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.[32] Again, "[w]e will not disturb a trial court's finding that a defendant has not been denied effective assistance of trial counsel unless it is clearly erroneous."[33]

As discussed in Division 5 (a), supra, the attorney's decision to continue representation rather than withdraw was tactical. And generally, " 'matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel.' "[34]

Moreover, the trial court's finding that Ford failed to meet the prejudice prong of *Strickland* is not clearly erroneous. Notwithstanding C. W.'s alleged statement to counsel that Ford did not know her age, there is evidence to the contrary. Both Jon and Sylvie Wubbena testified that, after discovering C. W. was only 16, they discussed her age with Ford. And C. W.'s friend, N. N., testified that Ford knew that they were both 16. The similar transaction involving 14-year-old S. F. also suggested that Ford preys on minors. Given the ample evidence that Ford knew C. W. was a minor, we fail to see how he was prejudiced by his attorney's failure to withdraw in order to testify on his behalf.[35]

(c) Finally, Ford contends that counsel was ineffective for failing to object to hearsay testimony. During C. W.'s testimony, she was asked about the time when Ford met N. N.'s father. Ford apparently arrived at N. N.'s house to collect N. N. and C. W. to take them to his apartment. According to C. W., N. N.'s father questioned Ford about his age, telling him that he "didn't want . . . any guy to take off with his 16-year-old daughter." Ford's attorney did not object to the

---

[31] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[32] See *Fennell v. State*, 271 Ga. App. 797, 800 (6) (611 SE2d 96) (2005).

[33] Id.

[34] *Johnson v. State*, 272 Ga. App. 385, 388 (5) (612 SE2d 518) (2005).

[35] See *Bates v. State*, 277 Ga. 771, 772 (596 SE2d 145) (2004).

statement. On appeal, Ford contends that this failure to object to "rank hearsay" constitutes ineffective assistance.

Hearsay is prohibited when it is being offered for the truth of the matter asserted.[36] That is not the case here, as the testimony was not admitted to show that the girls were, in fact, 16 years old. Rather, it was admitted to demonstrate that Ford was *told* the girls were only 16. Thus, the testimony is not hearsay.[37] It follows that counsel cannot be deemed ineffective for failing to object to the testimony on this ground.[38]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JULY 11, 2005 — 

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[36] See *Hurston v. State*, 194 Ga. App. 226 (390 SE2d 119) (1990).

[37] See id. ("anything seen or heard by a witness in the presence of a defendant is admissible and does not constitute inadmissible hearsay"); *Graham v. State*, 269 Ga. App. 590, 593-594 (3) (604 SE2d 651) (2004) (where testimony not offered for truth of the matter asserted, it is not hearsay).

[38] See *Owens v. State*, 271 Ga. App. 365, 370 (5) (609 SE2d 670) (2005) ("Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance.").