A07A0003. CARTLEDGE v. THE STATE.
(645 SE2d 633)

RUFFIN, Judge.

Ricardo Cartledge was charged with the following in connection with a series of robberies in Richmond County in April 1998: six counts of armed robbery; seven counts of possessing a firearm during the commission of a crime; one count of aggravated assault; and three counts of possessing a firearm by a convicted felon.[1] A jury found him guilty of four counts of armed robbery and four counts of possessing a firearm during the commission of a crime.[2] On appeal, Cartledge challenges the sufficiency of the evidence. He also contends that the

---

[1] The three counts of possessing a firearm by a convicted felon were not presented to the jury, and the State nolle prossed them after the trial.

[2] The jury was unable to reach a decision as to two counts of armed robbery, three counts of possessing a firearm during the commission of a felony, and aggravated assault; the trial court declared a mistrial as to those counts.

trial court erred by failing to sever his trial from that of his co-defendant, by introducing evidence of crimes not alleged in the indictment, and in charging the jury. We affirm, for reasons that follow.

On appeal, Cartledge no longer enjoys a presumption of innocence.[3] We review the evidence presented at trial in a light most favorable to the verdict, without weighing it or assessing the credibility of witnesses, to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] We set forth in detail many of the facts relevant to this case in *Metoyer v. State*,[5] which affirmed the conviction of Cartledge's co-defendant, Shaun Metoyer. Here, we summarize the facts and include others relevant to Cartledge's appeal.

The Richmond County Sheriff's Department investigated a series of armed robberies that occurred in the same general vicinity in April 1998. On April 23, 1998, shortly after one of the robberies occurred, authorities stopped a vehicle matching the description of the perpetrator's car given by a witness. The police detained the three occupants of the vehicle, Toine Daniels, Nicholas Nichols, and Tico Duncan. Daniels led the police to the home of Cartledge, the group's alleged "leader," where the police observed an automobile that matched a description of one of the vehicles involved in some of the robberies. Jenethia Hardin — who was dating Cartledge at the time — was leaving the house when they arrived. Hardin said that Cartledge had brought home a purse that evening and would not tell her where he obtained it. The police found Cartledge inside the house and arrested him. The authorities found two semi-automatic pistols at the house, and from Hardin's car they recovered three skull caps, a ski mask, goggles, a box of .380 ammunition, a brown, hooded sweatshirt, and two pairs of gloves.

Both Daniels and Nichols pled guilty and admitted their involvement in the armed robberies. In addition, they both testified regarding Cartledge's participation in the three robberies for which he was convicted.

1. First, Cartledge challenges the sufficiency of the evidence, although he candidly admits in his brief that "[t]he totality of the circumstances is certainly suggestive of Cartledge's guilt." Having reviewed the record, we conclude that the evidence was sufficient to sustain the jury's verdict. Significantly, Cartledge's co-defendants testified that Cartledge participated in the armed robberies for which

---

[3] See *Hill v. State*, 282 Ga. App. 743 (639 SE2d 637) (2006).
[4] See id. at 743-744.
[5] 282 Ga. App. 810 (640 SE2d 345) (2006).

he was convicted. One of the victims identified Cartledge as his assailant, and two of the victims identified a gun that was recovered from his girlfriend's vehicle as the gun used in their robberies. A purse belonging to one of the victims was recovered from the residence where Cartledge was arrested, and the police found a brown, hooded sweatshirt and a ski mask in his girlfriend's car that matched a victim's description of that worn by one of the robbers. Thus, the evidence was sufficient for the jury to find beyond a reasonable doubt that Cartledge was guilty of the charges for which he was convicted.[6]

2. In his second enumeration, Cartledge contends that the trial court erred in denying his motion to sever his trial from that of his co-defendant. "A defendant who seeks a severance must show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, this Court will not disturb the trial court's denial of a severance motion."[7] In ruling on a motion to sever, a trial court must consider three factors: "(1) whether a joint trial will create confusion of evidence and law; (2) whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and (3) whether the co-defendants will press antagonistic defenses."[8]

Cartledge has limited his analysis to the second factor, arguing that "the evidence implicating Metoyer in the robberies [for which Cartledge was not charged] spilled over to improperly prejudice Cartledge's case." However, Cartledge has failed to specify how the evidence actually prejudiced him. Given his failure to do so, and considering the clear evidence of Cartledge's guilt, "we have no concern that any spillover effect may have impacted the jury."[9] Further, the jury failed to convict Cartledge of six of fourteen charges alleged against him, indicating an ability to decide each charge separately.[10] Thus, Cartledge has failed to demonstrate that the trial court abused its discretion in refusing to sever his trial.[11]

3. Next, Cartledge enumerates as error the introduction of evidence regarding crimes for which he was not charged. Specifically, he asserts that the admission of two checkbooks that were recovered

---

[6] See *Reid v. State*, 281 Ga. App. 640, 642-643 (1) (637 SE2d 62) (2006); *Metoyer*, supra at 811-814 (1).

[7] *Denny v. State*, 281 Ga. 114, 115-116 (1) (636 SE2d 500) (2006).

[8] (Punctuation omitted.) *Wilbanks v. State*, 251 Ga. App. 248, 260 (9) (554 SE2d 248) (2001).

[9] *Adkins v. State*, 279 Ga. 424, 427 (3) (614 SE2d 67) (2005); see also *Baugher v. State*, 212 Ga. App. 7, 10-11 (1) (b) (440 SE2d 768) (1994).

[10] See *Jordan v. State*, 281 Ga. App. 419, 424 (2) (636 SE2d 151) (2006).

[11] See id.

from his residence at the time of arrest and testimony of his involvement in two robberies for which he was not charged constituted impermissible "bad character" evidence, and that its admission was therefore erroneous.

The State maintains that the checkbooks and the testimony regarding the robberies in which Cartledge was not involved were properly admitted as res gestae. It is well settled that

> surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact. Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense and does not tend to establish the main offense.[12]

Thus, the circumstances surrounding an arrest made close in time to the offense that bear a logical relation thereto may be admissible as part of the res gestae.[13] And, while the State "may not introduce matters that place the defendant's character in issue by showing that he has committed another, wholly independent crime, there is an exception where evidence of other criminal transactions is a part of the res gestae or tends to show motive, or to show a course of conduct pointing toward and leading to the crime."[14]

Here, Cartledge and Metoyer were indicted for a series of armed robberies that occurred on April 21, 22, and 23, 1998. The victims in each incident were robbed by one or two men armed with guns, and the assailants took the victims' personal items. On April 23, the police arrested Cartledge at his residence, at which time they recovered multiple items, including guns, a purse belonging to one of the victims, and two checkbooks, one in the name of Priscilla Jones and the other in the name of Scott or Donna Shivers.[15] The admission of the checkbooks, as well as the testimony regarding Cartledge's involvement in two robberies that occurred on April 22 — for which Metoyer, not Cartledge, was indicted — were arguably part of the res gestae.[16]

---

[12] (Punctuation omitted.) *White v. State*, 265 Ga. App. 302, 304-305 (2) (596 SE2d 9) (2003).

[13] See id. at 305.

[14] (Punctuation omitted.) *Lindsey v. State*, 234 Ga. 874, 876 (218 SE2d 585) (1975); see *Satterfield v. State*, 256 Ga. 593, 598 (6) (351 SE2d 625) (1987).

[15] Cartledge was not charged with any crimes against Jones or the Shivers.

[16] See *White*, supra; *Bell v. State*, 234 Ga. 473 (216 SE2d 279) (1975) (evidence of another robbery subsequent to robbery for which defendant was charged was admissible as part of res gestae where robberies occurred close in time and had multiple similarities).

However, pretermitting whether the trial court properly admitted the checkbooks and the testimony regarding the robberies for which Cartledge was not charged, any error arising from the admission of such evidence was harmless. Notably, the jury was unable to reach a decision regarding the April 22 robbery for which Cartledge was indicted, suggesting that the jurors were able to distinguish the testimony regarding the robberies on April 22 from that regarding the April 21 and 23 robberies. Given the evidence of Cartledge's guilt, including the testimony of his co-defendants, as well as eyewitness identification and physical evidence, we find that there is no reasonable probability that the results of the trial would have differed had the evidence been excluded.[17]

4. In his final enumeration, Cartledge contends that the trial court erred by instructing the jury that it consider an eyewitness's level of certainty about his identification when evaluating its reliability. In *Brodes v. State*,[18] our Supreme Court specifically disapproved this jury charge language. In that case, however, the only evidence linking the defendant to the crimes was the victims' eyewitness identification.[19] In the instant case, the State did not rely solely upon eyewitness identification, but presented other independent evidence linking Cartledge to the crimes, including physical evidence and the testimony of his two co-defendants. Under these circumstances, the "level of certainty" portion of the identity charge was harmless because it is highly probable that the error did not contribute to the verdict.[20]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED APRIL 18, 2007.

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.

---

[17] See *Shelton v. State*, 252 Ga. App. 444, 448 (3) (556 SE2d 540) (2001).
[18] 279 Ga. 435, 442 (614 SE2d 766) (2005).
[19] See id.
[20] See *Santana v. State*, 283 Ga. App. 696, 699 (2) (642 SE2d 390) (2007); *Joyner v. State*, 278 Ga. App. 60, 62-63 (3) (628 SE2d 186) (2006); *Dunson v. State*, 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005).