A07A1773. GREEN v. THE STATE.
(651 SE2d 174)

BLACKBURN, Presiding Judge.

Following a jury trial, Sullivan Green appeals his convictions in connection with two armed robberies, contending (1) that the trial court erred by admitting into evidence certain bullets possessed by Green at the time of his arrest, and (2) that the trial court erroneously charged the jury regarding the level of certainty of eyewitnesses' identification of Green. For the reasons that follow, we affirm.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Green] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Punctuation omitted.) *Short v. State*.[1] So viewed, the evidence shows that in February 2004, Green entered a shoe store and, after browsing for a few items, attacked the cashier by choking her and hitting her in the knee with a hammer while demanding money. As Green fled the store with the money, another store worker followed Green out the door and observed Green's vehicle (a gray Saturn) and license plate number. When police subsequently investigated the crime, two store employees identified Green from a photo lineup.

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

The day after the shoe store robbery, Green, wearing a mask and carrying a pistol, entered a family clothing store and fired a warning shot into the air, ordering the store occupants to the floor. After taking approximately $440 from the registers and putting it in a green pillow case, Green fled in a gray Saturn. A customer who witnessed the incident called 911 and followed Green in her own vehicle, reporting Green's tag number and describing their route to the 911 operator. A police officer in the area joined the pursuit and, after Green ran a red light and struck another car, began pulling Green over. As Green slowed, he bailed out of the car, and the officer steered his cruiser into Green's Saturn to stop it on a utility pole. After police arrested Green, they recovered from the gray Saturn a ski mask and a green pillow case with approximately $420 in it.

At the police station, a police investigator *Mirandized* Green and conducted a recorded interview, which was played at trial and in which Green admitted that he drove the gray Saturn to the clothing store and entered while firing a "starter pistol," telling a customer not to run. Green further admitted that he approached the cashier and ordered her to empty the registers into a green pillow case, which she did.

Green was charged with armed robbery[2] (two counts), possession of a firearm during the commission of a crime,[3] failure to obey a traffic control device,[4] fleeing and attempting to elude a police officer,[5] reckless driving,[6] failure to stop at the scene of an accident,[7] driving without insurance,[8] and possession of a firearm by a convicted felon.[9] Following a jury trial, Green was convicted on all counts except driving without insurance, and his motion for new trial was denied, giving rise to this appeal.

1. Green contends that the trial court erred in admitting into evidence certain bullets found in Green's possession at the time of his arrest, because the State did not provide a proper chain of custody. We disagree.

Green argues that bullets are fungible items which are indistinguishable from other similar items by mere observation, such as a blood sample or drugs. In doing so, he relies on and mischaracterizes

---

[2] OCGA § 16-8-41 (a).
[3] OCGA § 16-11-106 (b).
[4] OCGA § 40-6-20 (a).
[5] OCGA § 40-6-395 (a).
[6] OCGA § 40-6-390 (a).
[7] OCGA § 40-6-270 (a).
[8] OCGA § 40-6-10 (b).
[9] OCGA § 16-11-131 (b).

the holding in *Ramey v. State*,[10] by asserting in his brief that "[i]n the often cited case of *Ramey v. State*, . . . it was all but written in stone by the Supreme Court of Georgia that the chain of custody rule applies to shell casings and spent bullets." However, that case actually holds as follows:

> At the trial, the rifle, the spent cartridge casing, and the bullet were admitted over the objection by appellant that an unbroken chain of custody, as to each item, had not been established. There is no necessity of establishing a chain of custody where the evidence sought to be admitted is a distinct physical object that can be identified and differentiated by the senses on observation. Like the ax involved in *Starks*,[11] . . . the rifle here is not subject to the "chain of custody" requirement. *Assuming without deciding that the chain of custody rule would apply to a shell casing or spent bullet which was indistinguishable, at least to the naked eye, from all other similar shell casings and bullets, we find that the chain of custody as to these items was firmly established.* There was no error in admitting these items of evidence.

(Citations and punctuation omitted; emphasis supplied.) Id. at 113 (4). Therefore, contrary to Green's assertion, the *Ramey* case merely assumes without deciding the applicability of the chain of custody rule to shell casings or spent bullets.

Since *Ramey* was decided, the Supreme Court of Georgia has explicitly held that bullets, "unlike fungible articles, [can be] distinct and recognizable physical objects that [can] be identified by observation, eliminating the necessity of a chain-of-custody showing." *Kempson v. State*.[12] Here, the bullets were identified by a police officer who (i) testified as to recognizing the caliber and markings on the bullets, (ii) stated that they were "the same bullets that were recovered from Mr. Green's personal property," and (iii) authenticated the bag in which the bullets were stored as having his handwriting on it. Accordingly, the trial court did not err in admitting the bullets.

2. Green also contends that the trial court erred in instructing the jury as to how to consider the level of certainty of witnesses' identification. Green correctly points out that giving such an instruction is error. See *Brodes v. State*.[13] However, the record before us shows that Green requested the instruction himself. "The act of

---

[10] *Ramey v. State*, 238 Ga. 111, 113 (4) (230 SE2d 891) (1976).
[11] *Starks v. State*, 113 Ga. App. 780 (1) (149 SE2d 841) (1966).
[12] *Kempson v. State*, 278 Ga. 285, 286 (3) (602 SE2d 587) (2004).
[13] *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal. Because [Green] induced the giving of the charge below, he is precluded from attacking it now." (Citation and punctuation omitted.) *Inman v. State.*[14]

Moreover, we note that, with respect to the second robbery, there was ample additional evidence in the form of the defendant's own testimony and his recorded statement which was read to the jury, as to render any error harmless. Likewise, with respect to the first robbery, in addition to the two eyewitnesses who identified Green in a photo lineup and in court, the license plate number reported from a witness and the description of Green's vehicle matched the vehicle Green drove when he was apprehended. Cf. *Swanson v. State*[15] ("the giving of such an instruction does not require reversal when there is other significant evidence corroborating the eyewitness identification").

> Furthermore, the trial court instructed the jury about the State's burden of proving [Green's] identity as the perpetrator beyond a reasonable doubt as well as other relevant considerations; therefore, the jury charge on level of certainty was harmless as it is highly probable that it did not contribute to the verdict.

*Id.* at 44 (5). Accordingly, we discern no reversible error.
*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED AUGUST 14, 2007.

*Barbara B. Claridge*, for appellant.
*Daniel J. Craig, District Attorney*, for appellee.

---

[14] *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006).
[15] *Swanson v. State*, 282 Ga. 39, 43-44 (5) (644 SE2d 845) (2007).