## A08A1268. RABIE v. THE STATE.
### (668 SE2d 833)

MIKELL, Judge.

Abdul Ali Rabie ("Abdul") was indicted for armed robbery and theft by receiving stolen property. In 2004, a jury found him guilty of armed robbery, but not guilty of theft by receiving stolen property. The trial court sentenced Abdul to 20 years with 12 to serve. Pursuant to a granted out-of-time appeal, Abdul challenges the trial court's amended order denying his motion for new trial, contending that the trial court erred in denying his motions for mistrial and severance, and in admitting a witness's out-of-court identification of him. Abdul also challenges the effectiveness of his trial counsel. Finding no error, we affirm.

Abdul was tried along with co-defendant Rabie Ali Rabie ("Rabie"), his brother. Rabie was convicted of armed robbery, theft by receiving stolen property, and speeding.[1] Both defendants appealed their convictions. We affirmed Rabie's conviction at *Rabie v. State.*[2] The relevant facts, as set forth in that opinion, follow:

> [A]round 11:00 p.m. on January 9, 2004, Cassandra Brice was driving home from work when a red Jeep Cherokee occupied by two individuals blocked her path. A man wearing a black skull cap and gloves exited the passenger side of the Jeep and approached her car. Thinking he needed directions, Brice rolled down her car window. The man then pointed a gun at her and took her purse. Although Brice did not clearly see the man's face, which was covered with a

---

[15] Id. at 562 (3).

[1] *Rabie v. State*, 286 Ga. App. 684 (649 SE2d 868) (2007).

[2] Id.

scarf, she noticed that the Jeep had a Douglas County license tag. Several days later, a man wearing a hooded sweater tried to enter a pizza restaurant just after it had closed. When the owner told him the restaurant was closed, he walked to a red Jeep Cherokee parked nearby. Suspicious, the owner reported the Jeep's license tag number to police, who determined that the tag was stolen. A short time later, Deputy Lane Thompson of the Douglas County Sheriff's Office spotted the red Jeep Cherokee entering Interstate 20. Rabie, who owned the Jeep, was driving, and [Abdul] was in the front passenger seat. After the Jeep accelerated to speeds over 100 mph, Thompson activated his blue lights and stopped the Jeep. The license plate on the Jeep was a Douglas County tag reported stolen on January 7, 2004. Inside the Jeep, police discovered several items that had been in Brice's purse when she was robbed, including her cell telephone and driver's license. The Jeep also contained two guns, two hats, and [two] pair[s] of gloves. Brice identified one of the guns, the hats, and the gloves as similar to items used during the robbery. She further identified the Jeep as identical to the vehicle used by the robbers. Officers searching the Jeep also found a receipt indicating that at 10:30 p.m. on January 9, 2004 — approximately 30 minutes before Brice was robbed — food[, including a "double stack"] was purchased [with cash] at a [Wendy's] restaurant located near the robbery scene. [Jacqueline Stewart, t]he cashier who worked at the [Wendy's] drive-through[,] testified that she recalled selling food that night to [Abdul], who was driving a red Jeep[; that she recognized Abdul because he had visited the restaurant at least three or four times before; and, that they had kidded each other, he called her "[d]arling" and she called him "sugar"]. She further stated that another person was in the vehicle, but that she could not identify the person.[3]

Abdul testified at trial and denied committing the robbery. He claimed that two friends, Daniel Osborne and Rebecca Cooper, picked him up from work at approximately 9:30 p.m. The three friends went to Cooper's apartment and played cards until around 2:00 a.m. Cooper testified that on January 9, 2004, she and Osborne picked up Abdul from his job at 9:30 p.m. and that they went back to her apartment, drank Shirley Temples, watched a movie, and played cards.

---

[3] (Punctuation omitted.) Id. at 684-685.

1. Abdul contends that the trial court erred in denying his motion to sever his case from Rabie's because of the spillover effect of the evidence against Rabie versus the minimal evidence against Abdul. We disagree.

> When the death penalty is not sought, the severance of defendants' trials is within the sound discretion of the trial court and its decision will not be disturbed unless there is an abuse of that discretion. OCGA § 17-8-4. The burden is on the defendant moving for severance to demonstrate more than the possibility that a separate trial would provide him with a better chance of acquittal; he must establish a clear showing of prejudice.[4]

In exercising that discretion, a court is to consider the following factors:

> (1) whether a joint trial will create confusion of evidence and law; (2) whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and (3) whether the co-defendants will press antagonistic defenses.[5]

The trial court denied Abdul's motion to sever as untimely but nonetheless ruled that he did not carry his burden of proof. Pretermitting whether the motion to sever was timely filed, the trial court correctly denied it because Abdul failed to make the required showings. Abdul contends that the evidence against Rabie was stronger as the Jeep and gun found therein belonged to Rabie. However, Stewart identified Abdul as the driver of a red Jeep, and a receipt found in the Jeep indicated a purchase from Wendy's, nearby the scene of the crime, approximately thirty minutes before Brice was robbed by two men in a red Jeep with a stolen Douglas County tag.

Abdul also contends that since he and Rabie have the same last name, the jury may have been confused about which brother a witness was referencing. This case involved only two defendants and the trial court instructed the jury to consider the guilt or innocence of each defendant separately. Although Abdul and his brother have the same last name, Abdul was acquitted of the theft by receiving stolen property, i.e., the stolen license tag, while Rabie — the owner

---

[4] (Footnote omitted.) *Jordan v. State*, 281 Ga. App. 419, 423 (2) (636 SE2d 151) (2006).

[5] (Punctuation and footnote omitted.) *Cartledge v. State*, 285 Ga. App. 145, 147 (2) (645 SE2d 633) (2007). See also *King v. State*, 262 Ga. App. 37, 39 (3) (584 SE2d 652) (2003).

of the vehicle — was convicted of that charge, which indicated the jury's ability to decide each charge separately.[6] Accordingly, we do not find that this factor caused confusion of the evidence and the law. The trial court did not abuse its discretion in refusing to sever the trial.

2. Abdul's second enumeration of error is somewhat convoluted. He seems to contend that the trial court erred in admitting Stewart's in-court identification of him because it did not have an independent origin.[7] We disagree.

"Even where a pretrial identification has been found to be tainted, a subsequent in-court identification is admissible if it has some other, independent basis."[8] Here, Stewart identified Abdul in court as the man who came through the Wendy's drive-thru on the evening in question at approximately "10:00-ish, 11:00." She further testified that Abdul had visited the restaurant three or four times that month; that he typically ordered a "double stack"; that she remembered him because he was "cute"; that he was driving "a red car like a Jeep" that evening; and that he paid for his order in cash. On cross-examination, Stewart testified that she specifically remembered the evening of January 9, 2004. Additionally, the Wendy's receipt, which was admitted into evidence and which Stewart testified she had not seen since the night in question, reflected that Abdul purchased a "double stack" with cash.

Abdul contends that portions of Stewart's testimony prove that she had limited familiarity with him. For example, on cross-examination, Stewart testified that the Wendy's was exceptionally busy on the evening in question and that Abdul had visited the restaurant no more than four times over a four-month period. Abdul also points out that on direct examination, Stewart testified she was positive in her identification, but that on cross-examination, Stewart testified that it was possible she was mistaken, and that Stewart denied telling defense counsel in a phone call just prior to trial that she "didn't have a real strong recollection of all those incidents just because it's been almost a year." These arguments, however, go to the weight of the evidence, not its admissibility.[9] The trial court did not err in admitting Stewart's in-court identification.[10]

---

[6] See *Cartledge*, supra.

[7] Although Abdul alleges that Stewart's pre-trial identification was impermissibly suggestive, he does not challenge the trial court's denial of his motion to suppress on this issue.

[8] (Footnote omitted.) *Scott v. State*, 248 Ga. App. 542, 544 (1) (b) (545 SE2d 709) (2001).

[9] See id. at 545 (1) (b).

[10] See, e.g., *Escobar v. State*, 279 Ga. 727, 729 (2) (620 SE2d 812) (2005) (in-court identification based on witness's viewing defendant at the crime scene admissible); *Horton v. State*, 269 Ga. App. 407, 412 (3) (604 SE2d 273) (2004) (witness's in-court identification had an independent origin).

3. Abdul contends that the trial court erred in refusing to declare a mistrial when Brice testified that she made a positive photographic identification of Abdul at the police station.

Prior to trial, Rabie moved to exclude evidence that Brice had identified him in a photographic lineup prepared by police. The trial court granted the motion, ruling that the procedure was impermissibly suggestive. During recross-examination, the following colloquy occurred between Abdul's counsel and Brice:

Q: You've had the opportunity to view photos of Abdul Rabie prior to today's date; isn't that correct?
A: That's how I could — to make sure I knew it was him. As I saw the photographs I also identified him. I identified the robber [Rabie Rabie]. I separated the robber from the driver.
Q: Ms. Brice —
A: Yes.
Q: — prior to just now when you said that, have you ever identified Abdul Rabie as specifically being a person that you recognized from the night of January 9th, 2004? Isn't it correct that you have never done that prior to two seconds ago?
A: The driver or the robber?
Q: The driver?
A: The driver.
Q: Uh-huh.
A: I identified him from photographs that Detective Brown showed me.
Q: Of the driver?
A: The driver and the robber.
Q: When did you allegedly identify the driver?
A: When I was shown pictures at the police department.

Following this exchange, Abdul's counsel moved for a mistrial, arguing that the state never advised her of Brice's pre-trial identification of Abdul and that she would have filed a motion to exclude it had she been made aware of it. In response, the state argued that Brice must have misunderstood counsel's question; that Brice never identified Abdul from any photographs; that the state had not failed to disclose any discovery to counsel; and that Brice had never identified Abdul as the driver of the Jeep. The trial court denied the request for a mistrial, finding that defense counsel had elicited the testimony. After this ruling, the state asked Brice on redirect whether she had ever identified Abdul as the driver of the Jeep. She

testified that she had not.

Abdul contends that the trial court abused its discretion in denying his motion for a mistrial because Brice's identification was unreliable and he was denied the right to cross-examine Brice about her identification of Rabie, which evidence had been excluded. "[A] party cannot complain of error resulting from its own conduct or tactics."[11] Because defense counsel elicited the identification testimony from Brice, Abdul cannot now complain about it. We find no abuse of discretion.[12]

4. Abdul contends that his conviction should be reversed because trial counsel, Sherri Kelley, had an actual conflict of interest. During Stewart's cross-examination, the following exchange occurred:

> [Kelley:] Now, again, when I talked to you on the phone, do you not recall stating to me that you didn't have a real strong recollection of all those incidents just because it's been almost a year? Do you not recall saying that?
> [Stewart:] I recall talking to you. You were asking me could I — was I positive, isn't it possible that he favor someone that I have seen before, and I told you anything is possible. I remember our conversation, yes, ma'am.
> [Kelley:] Now, so you don't recall saying that to me?
> [Stewart:] No.[13]

According to Abdul, an actual conflict existed because Kelley could have been called as a defense witness to impeach Stewart's testimony. Abdul relies on *Cuyler v. Sullivan*,[14] to support this enumeration of error; however, this Court has held that "[w]hether the conflict inherent in counsel's dual role as advocate and witness constituted ineffective assistance of counsel is to be evaluated under the *Strickland* standard, rather than *Cuyler v. Sullivan*,[15] which is reserved for conflicts arising from multiple representation."[16] As discussed in Division 5 (a), infra, the trial court did not err in denying Abdul's claim of ineffective assistance on this basis.

5. In his remaining enumerations of error, Abdul contends that his trial counsel rendered ineffective assistance.

---

[11] (Citations and punctuation omitted.) *Talmadge v. State*, 236 Ga. App. 454, 458 (2) (512 SE2d 329) (1999).

[12] See *Yonce v. State*, 253 Ga. App. 748 (1) (560 SE2d 329) (2002).

[13] To the extent we have cited an exchange different than the one Abdul refers to in his brief, we note that Abdul did not cite to any portion of the record to support this allegation, as required by Court of Appeals Rule 25 (c) (2). Accordingly, if we have omitted the specific exchange Abdul references, the responsibility rests with counsel.

[14] 446 U. S. 335, 345 (IV) (100 SC 1708, 64 LE2d 333) (1980).

[15] Id.

[16] (Footnotes omitted.) *Wright v. State*, 267 Ga. 496, 497 (2) (b) (480 SE2d 13) (1997).

In order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show both that counsel's performance was deficient and that the deficiency was prejudicial to his defense. The first part of the test requires that the defendant overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. In order to satisfy the second part of the test, the defendant must show that there is a reasonable probability that, absent counsel's deficiency, the result of the trial would have been different.[17]

(a) Abdul contends that his trial counsel performed deficiently by failing to withdraw as counsel despite the existence of a conflict of interest, as discussed in Division 4, supra. We disagree.

To establish ineffective assistance of counsel due to a conflict of interest on the part of trial counsel, a defendant who raised no objection at trial . . . must prove that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.[18]

Abdul has not shown that the alleged conflict of interest adversely affected Kelley's performance. At the hearing on Abdul's amended motion for new trial, Kelley testified that Abdul knew that she believed Stewart was lying but that she did not raise the possibility of disqualification with Abdul or the trial court, or ask for a mistrial, because she felt that "the best way to handle it was through attempting to cross-examine Ms. Stewart[, so that] the jury would be able to recognize that [Stewart's] statement was very inconsistent." The record shows that Abdul was aware of the alleged conflict and that he did not object to counsel's strategic decision to cross-examine Stewart.

This Court addressed a similar situation in *Ford v. State*,[19] and found that counsel's decision not to withdraw as a witness was reasonable trial strategy and did not amount to ineffective assistance.[20] In that case, the defendant appealed his convictions for

---

[17] (Citations omitted.) *Collins v. State*, 283 Ga. App. 188, 192 (2) (641 SE2d 208) (2007).
[18] (Citation and punctuation omitted.) *Fogarty v. State*, 231 Ga. App. 57, 59 (3) (497 SE2d 628) (1998).
[19] 274 Ga. App. 695 (617 SE2d 262) (2005).
[20] Id. at 702-703 (5) (a).

pimping, contributing to the delinquency of a minor, and sexual exploitation of a minor.[21] Just prior to trial, the victim spoke with trial counsel and asked him to tell the defendant that she was sorry. She also told counsel that the defendant did not know that she was 16.[22] After hearing this, counsel added himself to the witness list. The state objected and the trial court gave counsel the choice of disqualifying himself as counsel or removing himself from the witness list. Counsel removed himself from the witness list. During cross-examination, trial counsel questioned the victim about her statement and she responded, " 'And then I said no comment, I wasn't going to answer your questions.' "[23] The defendant alleged that counsel was hampered by an actual conflict and thus rendered ineffective assistance. We rejected this claim, finding that the victim had been amply impeached; that counsel's testimony "was not substantial enough to warrant his withdrawal from the case";[24] that the defendant was aware of the conflict; and that counsel's decision to continue representation was tactical.[25]

Likewise, in this case, counsel's decision to continue representation and cross-examine Stewart about the phone conversation rather than withdraw as counsel was a reasonable tactical decision. "Matters such as calling a particular witness, questioning on direct and cross-examination, making trial motions, and objecting to testimony are strategic and tactical decisions within the exclusive province of the attorney after consultation with the client"[26] and do not amount to ineffective assistance of counsel.[27] The trial court did not err in rejecting this claim.

(b) Abdul contends that he received ineffective assistance of counsel because counsel requested a jury charge on eyewitness identification which contained language instructing the jury to consider a witness's "level of certainty" in assessing the reliability of the identification. As Abdul notes, our Supreme Court disapproved the "level of certainty" language six months after the trial of this case.[28] Abdul's co-defendant, Rabie, raised this same argument in his appeal and we rejected it, finding that "inclusion of the 'level of certainty language' was harmless because it is highly probable that the error did not contribute to the judgment."[29] In that case, we held

---

[21] Id. at 695.

[22] Id. at 701 (5).

[23] Id. at 702 (5).

[24] Id. at 702 (5) (a).

[25] Id. at 702-703 (5) (a).

[26] (Citation omitted.) *Jeremiah v. State*, 250 Ga. App. 397, 402 (2) (551 SE2d 819) (2001).

[27] *Gibson v. State*, 291 Ga. App. 183, 189 (4) (661 SE2d 850) (2008).

[28] See *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

[29] (Punctuation and footnote omitted.) *Rabie*, supra at 687 (2).

that Rabie had not shown that he was prejudiced by the charge, and that, therefore, he could not prevail on his ineffective assistance claim. We find similarly here.

Here, unlike in *Brodes*,[30] there was evidence in addition to Stewart's identification which linked Abdul to the robbery. The vehicle involved in the robbery was engaged in suspicious activity on the evening after the robbery; the vehicle had a stolen tag, and officers had to chase it down the highway at speeds exceeding 100 mph; Abdul was riding in the front passenger seat of the vehicle when it was finally stopped; two hats, two pairs of gloves, and two guns, including the one used by the perpetrator, were discovered under Abdul's seat; Brice's belongings, including her purse, cell phone, and a cell phone case containing her driver's license, work identification card, and a security parking card, were discovered in the back seat of the vehicle; and, a Wendy's bag and the Wendy's receipt were recovered from a black trash bag in the rear compartment of the vehicle. Furthermore, while Stewart expressed certainty on direct examination, she acknowledged on cross-examination that she could have been mistaken. Under these circumstances, "the jury charge on level of certainty was harmless as it is highly probable that it did not contribute to the verdict."[31] Accordingly, Abdul has not shown that he was prejudiced by the charge, and he cannot prevail on his ineffective assistance claim on this ground.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

## DECIDED OCTOBER 22, 2008.

*Garland, Samuel & Loeb, William C. Lea*, for appellant.

*David McDade, District Attorney, James E. Barker, James A. Dooley, Assistant District Attorneys*, for appellee.

---

[30] Supra.

[31] (Citation omitted.) *Green v. State*, 287 Ga. App. 248, 251 (2) (651 SE2d 174) (2007).